*Roman Catholic Archbishop of Washington v. John Doe, et al.*, No. 9, September Term, 2024; *Board of Education of Harford County, et al. v. John Doe*, No. 10, September Term, 2024; *The Key School, Inc., et al. v. Valerie Bunker*, Misc. No. 2, September Term, 2024.

**VESTED RIGHT – STATUTE OF LIMITATIONS – ART. 24, MARYLAND DECLARATION OF RIGHTS – ART. III, § 40, CONSTITUTION OF MARYLAND**

The Constitution of Maryland prohibits all legislation that retroactively abrogates vested property rights without just compensation. There is a vested property right in a cause of action that has accrued, but there is no vested right to be free of liability upon the expiration of an ordinary statute of limitations. An ordinary statute of limitations is a procedural device intended to encourage the prompt resolution of claims and promote fairness by requiring suit to be filed while evidence is still likely to be available and untainted by the passage of time. It reflects a legislative determination to block access to a remedy for a cause of action that otherwise continues to exist after a designated period, not to absolve defendants from accountability.

**VESTED RIGHT – STATUTE OF REPOSE – ART. 24, MARYLAND DECLARATION OF RIGHTS – ART. III, § 40, CONSTITUTION OF MARYLAND**

Unlike statutes of limitations, statutes of repose create a substantive right protecting a defendant from liability after a legislatively determined period. They do not merely render a remedy to a cause of action unavailable; they eliminate the cause of action itself. Statutes of repose therefore create a substantive immunity from liability that is not a mere byproduct of a desire to promote swift and fair resolution of claims and avoid unfairness in the prosecution of stale claims. Upon the running of a statute of repose, a defendant protected by such a statute has a vested right to be free of liability.

**COURTS & JUDICIAL PROCEDURE § 5-117 – CHILD VICTIMS ACT OF 2023 – STATUTE OF LIMITATIONS**

In 2017, the General Assembly enacted legislation that, among other things, altered an existing time restriction applicable to filing child sexual abuse claims and established a new time restriction. The new provision stated that "[i]n no event" may a civil action for child sexual abuse be filed against a defendant not alleged to have been the perpetrator of the abuse "more than 20 years after the date on which the victim reaches the age of majority." In 2023, the General Assembly enacted the Child Victims Act of 2023. That law eliminated all time restrictions applicable to child sexual abuse claims, including the new provision that had been added in 2017. The new provision in the 2017 law was an ordinary statute of limitations, the expiration of which did not give rise to a vested right to be free of liability. Accordingly, the Child Victims Act of 2023, which eliminated that 2017 statute of limitations, did not retroactively abrogate vested rights in violation of the Constitution of Maryland and the Maryland Declaration of Rights.

**COURTS & JUDICIAL PROCEDURE § 5-117 – CHILD VICTIMS ACT OF 2023 – RETROACTIVE RESURRECTION OF A PREVIOUSLY PRECLUDED REMEDY – HEIGHTENED RATIONAL BASIS REVIEW**

Heightened rational basis review is the appropriate level of scrutiny to apply to a statute that retroactively resurrects a remedy that had previously been precluded by a statute of limitations. Under heightened rational basis review, a court does not accept any reasonably conceivable state of facts that could provide a rational basis for the challenged legislation, but rather will consider only those purposes that are obvious from the text or legislative history of the enactment, those plausibly identified by the litigants, or those provided by some other authoritative source. The legislation will be upheld only if it bears a real and substantial relation to the problem addressed by the statute. The Child Victims Act of 2023 bears a real and substantial relation to the problem addressed by the Act.

Circuit Court for Prince George's County
Case No. C-16-CV-23-004497

Circuit Court for Harford County
Case No. C-12-CV-23-000767

United States District Court for the District of Maryland
Case No. 1:23-cv-02662-MJM

Argued: September 10, 2024

IN THE SUPREME COURT

OF MARYLAND

Nos. 9 & 10; Misc. No. 2
September Term, 2024

---

ROMAN CATHOLIC ARCHBISHOP OF
WASHINGTON
v.
JOHN DOE, ET AL.

---

BOARD OF EDUCATION OF
HARFORD COUNTY, ET AL.
v.
JOHN DOE

---

THE KEY SCHOOL, INC., ET AL.
v.
VALERIE BUNKER

---

Fader, C.J.,
Watts,
Booth,
Biran,
Eaves,
Killough,
McDonald, Robert N.
    (Senior Justice, Specially
    Assigned),

JJ.

---

Opinion by Fader, C.J.
Biran, Eaves, and McDonald, JJ., dissent.

---

Filed: February 3, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

These three cases, consolidated only for purposes of this opinion, raise the question of whether the retroactive elimination of time restrictions applicable to child sexual assault claims that is contained in the Child Victims Act of 2023 is constitutional as applied to the defendants. We hold that it is.

In 2017, the General Assembly enacted legislation that, among other things, established a new time restriction applicable to filing child sexual abuse claims. The new provision stated that "[i]n no event" may a civil action for child sexual abuse be filed against a defendant not alleged to have been the perpetrator of the abuse "more than 20 years after the date on which the victim reaches the age of majority." 2017 Md. Laws, Ch. 12, § 1; 2017 Md. Laws, Ch. 656, § 1.

In 2023, the General Assembly enacted the Child Victims Act of 2023. That law eliminated all time restrictions applicable to child sexual abuse claims, including the new provision that had been added in 2017.

Following the effective date of the Child Victims Act, alleged survivors of childhood sexual abuse have filed numerous claims that were previously time-barred. Before this Court, three defendants in such lawsuits contend that the 2023 General Assembly lacked the authority to eliminate time restrictions that had already run. The parties' respective arguments focus on (1) whether the new time restriction in the 2017 law was a statute of limitations or a statute of repose, and (2) whether either or both types of restriction create a vested right to be free of liability.

We hold that the relevant provision of the 2017 law created a statute of limitations and that the running of a statute of limitations does not establish a vested right to be free

from liability from the underlying cause of action. We further hold that it was within the power of the General Assembly to retroactively abrogate that statute of limitations. The Child Victims Act of 2023 is therefore constitutional as applied to the defendants in the three cases before us.

## BACKGROUND

### A.     Legal Background

At issue are civil claims for damages arising out of alleged incidents of sexual abuse that occurred while the alleged victim was a minor, which we will refer to as "child sexual abuse claims." Until 2003, the only time restriction applicable to child sexual abuse claims was the generally applicable three-year statute of limitations on civil claims that is currently set forth in § 5-101 of the Courts and Judicial Proceedings Article (2020 Repl.; 2024 Supp.).[1] *Doe v. Roe*, 419 Md. 687, 694-95 (2011).

As early as 1994, the General Assembly considered establishing a longer limitations period for child sexual abuse claims. *Id.* It first did so in 2003 when it adopted § 5-117 of the Courts and Judicial Proceedings Article, which established a seven-year limitations period for such claims. 2003 Md. Laws, Ch. 360. The new limitations period applied only prospectively to claims that were not already time-barred. 2003 Md. Laws, Ch. 360, § 2.

---

[1] Section 5-101 provides: "A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." Md. Code Ann., Cts. & Jud. Proc. § 5-101.

In 2017, the General Assembly passed two identical bills to further expand the limitations period. *See* 2017 Md. Laws, Chs. 12 & 656. We will refer to the bills collectively as the "2017 Act." That Act, as relevant here, accomplished four things.

First, it extended the existing seven-year limitations period in § 5-117(b) to permit filing of an action (1) before the alleged victim reaches the "age of majority,"[2] or (2) within the later of 20 years after the alleged victim reaches the age of majority or three years after the defendant is convicted of certain related crimes. 2017 Act, § 1.

Second, in a new § 5-117(c), the 2017 Act established heightened requirements to obtain damages against non-perpetrator defendants for claims brought more than seven years after the alleged victim reached the age of majority. 2017 Act, § 1. Those included proof that the defendant owed a duty of care to the victim, employed or exercised responsibility or control over the perpetrator, and acted with gross negligence. *Id.*

Third, in a new § 5-117(d), the interpretation of which is at the center of these cases, the 2017 Act provided:

> In no event may an action for damages arising out of an alleged incident or incidents of sexual abuse that occurred while the victim was a minor be filed against a person or governmental entity that is not the alleged perpetrator more than 20 years after the date on which the victim reaches the age of majority.

---

[2] The "age of majority" is defined in § 1-401 of the General Provisions Article as "18 years." Md. Code Ann., Gen. Prov. § 1-401(a) (2019 Repl.). An individual who has reached the age of majority "is an adult for all purposes," including "legal capacity, rights, powers, privileges, duties, liabilities, and responsibilities[.]" *Id.*

3

2017 Act, § 1.  We will refer to that provision as "Subsection (d)."  Section 3 of the 2017 Act, which was not codified,[3] added that "the statute of repose under § 5-117(d) . . . shall be construed to apply both prospectively and retroactively to provide repose to defendants regarding actions that were barred by the application of the period of limitations applicable before October 1, 2017."  2017 Act, § 3.

Fourth, the 2017 Act exempted child sexual abuse claims from the notice provisions of both the Local Government Tort Claims Act and the Maryland Tort Claims Act.[4]  *Id.* § 1 (amending § 5-304 of the Courts and Judicial Proceedings Article and § 12-106 of the State Government Article).

The 2017 Act became effective on October 1, 2017.

In 2023, the General Assembly passed the Child Victims Act of 2023, 2023 Md. Laws, Ch. 6, which we will refer to as the "2023 Act."  As relevant here, the 2023 Act also contained four categories of changes.

First, the 2023 Act amended § 5-117(b) to provide that an action for alleged child sexual abuse could be brought "at any time," without regard to "any time limitation under

---

[3] Provisions of enrolled laws that are "codified" appear in the published volumes of the Maryland Code.  Provisions of enrolled laws that are not codified still constitute the law of Maryland, but do not appear in the Maryland Code.  *See Doe*, 419 Md. at 699 n.11.

[4] The 2017 Act added language to the notice provisions of each of these tort claims acts stating that the relevant sections do not apply to claims "brought under § 5-117 of the Courts Article."  2017 Md. Laws, Chs. 12 & 656, § 1.  As § 5-117 is a limitations provision, not a provision giving rise to a cause of action, claims cannot be brought under it.  For purposes of this opinion, we assume without deciding that the language was intended to apply to all claims that are subject to the limitations periods set forth in § 5-117, i.e., child sexual abuse claims.

4

a statute of limitations, a statute of repose, the Maryland Tort Claims Act, the Local Government Tort Claims Act, or any other law[.]" 2023 Act, § 1. Accordingly, the 2023 Act deleted the restriction periods previously in subsections (b) and (d). The 2023 Act also included uncodified provisions stating that: (1) the General Assembly intends that child sexual abuse claims "may be filed at any time without regard to previous time limitations," *id.* § 2; and (2) the 2023 Act should be construed to apply retroactively to any previously barred claim, *id.* § 3.

Second, the 2023 Act deleted the heightened requirements to obtain an award of damages against a non-perpetrator defendant for lawsuits filed more than seven years after the alleged victim reaches the age of majority. *Id.* § 1 (removing prior § 5-117(c)).

Third, the 2023 Act established limits on damages awards available in child sexual abuse cases. The Act permitted greater awards of damages against governmental entities, up to $890,000 per claimant, than are available for most other types of claims.[5] *Id.* (amending §§ 5-303(a)(4) and 5-518(b)(2) and (c)(2) of the Courts and Judicial Proceedings Article and § 12-104(a)(2)(iii) of the State Government Article).

Fourth, the 2023 Act permitted a party to take an immediate appeal from an interlocutory order denying a motion to dismiss a child sexual abuse claim on the ground

---

[5] *See* Cts. & Jud. Proc. §§ 5-303 & 5-518 (generally capping damages under the Local Government Tort Claims Act and as applicable to county boards of education, respectively, at $400,000 per individual claim and $800,000 per occurrence); Md. Code Ann., State Gov't § 12-104 (2021 Repl.; 2024 Supp.) (limiting the State's waiver of sovereign immunity under the Maryland Tort Claims Act to $400,000 per claimant arising from a single incident or occurrence).

that the 2023 Act is unconstitutional. *Id.* (adding § 12-303(3)(xii) of the Courts and Judicial Proceedings Article).

The 2023 Act became effective on October 1, 2023.

**B.     Factual and Procedural Background**

After the 2023 Act went into effect, numerous adult plaintiffs whose claims had been time-barred before October 1, 2023 filed child sexual abuse claims in State and federal courts in Maryland.  Three cases are at issue here.

### 1.     *Case No. 9,* **Roman Catholic Archbishop of Washington v. Doe**

Plaintiffs proceeding under pseudonyms filed a putative class action in the Circuit Court for Prince George's County seeking to hold the Roman Catholic Archbishop of Washington liable for alleged sexual and emotional abuse by clergy.  The Archbishop moved to dismiss.  The circuit court denied the motion based on its determination that Subsection (d) established a statute of limitations, not a statute of repose, and so did not give rise to vested rights.  The Archbishop noted an interlocutory appeal and the parties jointly petitioned for certiorari, which this Court granted.  *Roman Cath. Archbishop of Washington v. Doe*, 487 Md. 196 (2024).

### 2.     *Case Misc. No. 2,* **The Key School, Inc. v. Bunker**

Ms. Valerie Bunker filed a complaint in the United States District Court for the District of Maryland seeking to hold The Key School, Inc. and The Key School Building Finance Corporation (collectively, "The Key School") liable for alleged sexual and emotional abuse by The Key School teachers between 1973 and 1977.  Ms. Bunker moved

6

to certify the question of the 2023 Act's constitutionality to this Court. The Key School opposed certification and separately moved to dismiss. The court granted Ms. Bunker's motion to certify without ruling on the motion to dismiss. *Bunker v. Key Sch., Inc.*, No. MJM-23-2662, 2024 WL 1580184 (D. Md. Apr. 11, 2024). This Court accepted a slightly modified certified question.

### 3. *Case No. 10,* Board of Education of Harford County v. Doe

A plaintiff proceeding under the pseudonym John Doe sued the Board of Education of Harford County and several individuals in the Circuit Court for Harford County, seeking to hold the defendants liable for alleged sexual abuse by a teacher and a custodian. The Board moved to dismiss. The circuit court denied the motion based on its determination that Subsection (d) established a statute of limitations, not a statute of repose, and so did not give rise to vested rights. The Board noted an interlocutory appeal and petitioned for certiorari, which this Court granted. *Bd. of Educ. of Harford County v. Doe*, 487 Md. 196 (2024).

In all three cases, the underlying factual allegations establish that the claims would have been barred by Subsection (d) before the effective date of the 2023 Act. The question presented or certified in all three cases is the same:

> Does the Maryland Child Victims Act of 2023, 2023 Md. Laws Ch. 5 (S.B. 686) (codified at Md. Code Ann., Cts. & Jud. Proc. § 5-117), constitute an impermissible abrogation of a vested right in violation of Article 24 of the Maryland Declaration of Rights and/or Article III, Section 40 of the Maryland Constitution?

7

We will refer to the plaintiffs in all three cases collectively as the "Plaintiffs" and to the institutional defendants in all three cases collectively as the "Institutions."

## DISCUSSION

### I. STANDING OF THE BOARD OF EDUCATION OF HARFORD COUNTY

Before we turn to the merits, we must address a threshold standing question in Case No. 10, which is whether the Board of Education of Harford County, as a subdivision of the State, has standing to challenge the constitutionality of the 2023 Act. The Board concedes that political subdivisions generally lack standing to challenge the constitutionality of State statutes. *See Bd. of Educ. of Prince George's County v. Sec'y of Personnel*, 317 Md. 34, 44-45 (1989). However, the Board contends that several exceptions apply here, one of which is that "[w]here one party has standing, we do not inquire typically as to whether another party on the same side also has standing." *Anne Arundel County v. Bell*, 442 Md. 539, 583 (2015).

The complaint against the Board names as additional defendants "John Does (1-10)," who are alleged to be Board employees who "employed, supervised, controlled and/or oversaw" the alleged perpetrators. The Board contends that it has a legal obligation to defend its employees, all of whom would have standing to contest the constitutionality of the 2023 Act.[6] As a result, the Board asserts, the Court should not inquire into its standing.

---

[6] Section 5-518 of the Courts and Judicial Proceedings Article provides a limited waiver of a city or county board of education's sovereign immunity from tort claims; requires joinder of the board as a party to an action against a county board employee,

The difficulty for the Board is that its John Doe co-defendants have not been served and joined as parties to the litigation. Although in an ordinary case that would prevent us from relying on the standing of those other would-be parties, this case is not ordinary. The procedural status in which this case is presented is due to the 2023 Act, in which the General Assembly encouraged the early resolution of constitutional challenges by permitting interlocutory appeals by "[a] party" from the denial of motions to dismiss. 2023 Act, § 1 (adding § 12-303(3)(xii) of the Courts and Judicial Proceedings Article). The Board's arguments before us are also substantially similar to those of the other Institutions. Under these unique circumstances, we will not inquire further into the Board's standing.

## II. STATUTES OF LIMITATIONS, STATUTES OF REPOSE, AND VESTED RIGHTS

Over two decades ago, this Court surveyed more than a century of jurisprudence and held that the Constitution of Maryland prohibits all legislation that retroactively abrogates vested property rights without just compensation, no matter the circumstances.[7]

---

member, or volunteer resulting from a tortious act or omission within the scope of their duties; provides immunity to such an employee, member, or volunteer for such acts under certain conditions; and provides for certain judgments against such an employee, member, or volunteer to be levied against the county board. *See generally Neal v. Balt. City Bd. of Sch. Comm'rs*, 467 Md. 399, 404-06 (2020).

[7] As explained in *Dua v. Comcast Cable of Maryland, Inc.*, cases in which legislative enactments have been found unconstitutional for retroactively abrogating vested rights have sometimes not identified the constitutional provision at issue. 370 Md. 604, 629 (2002) (citing cases). On other occasions, this Court has identified one or both of Article 24 of the Maryland Declaration of Rights and Article III, § 40 of the Constitution of Maryland. *See id*. at 628-29. Article 24, Maryland's due process and equal protection clause, provides: "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of

*See Dua v. Comcast Cable of Maryland, Inc.*, 370 Md. 604, 623 (2002); *see also Allstate Ins. Co. v. Kim*, 376 Md. 276, 296 (2003); *Muskin v. State Dep't of Assessments & Tax'n*, 422 Md. 544, 557 & n.8 (2011); *State v. Goldberg*, 437 Md. 191, 204-05, 205 n.13 (2014); *Ellis v. McKenzi*e, 457 Md. 323, 334-35 (2018).

None of the parties challenge the premise that the 2023 Act would be unconstitutional to the extent, if any, that it retroactively abrogates vested rights. Instead, they spar over whether the 2017 Act—specifically Subsection (d)—created vested rights. In doing so, their arguments focus on two questions: (1) whether Subsection (d) established a statute of repose or a statute of limitations; and (2) whether the running of either type of restriction period establishes a vested right in a defendant to be free of liability from a cause of action. The Institutions' primary argument is that Subsection (d) established a statute of repose, the running of which creates a vested right in a prospective defendant not to be sued. In the alternative, they contend that the running of a statute of limitations has the same effect. The Plaintiffs' primary argument is that Subsection (d) established a statute of limitations, the running of which does not create any vested rights. In the alternative,

---

the land." Article III, § 40, Maryland's takings clause, provides: "The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation." In *Dua*, we attempted to harmonize case law in this area by explaining that a statute that authorizes the taking of private property without providing just compensation has violated Article III, § 40 and, in doing so, has also taken property in a manner not authorized "by the Law of the land" in violation of Article 24. *Id.* at 629-30.

they contend that the running of a statute of repose is similarly ineffective in creating vested rights.

We will begin by exploring differences between statutes of limitations and statutes of repose. We will then consider the nature of vested rights in Maryland jurisprudence, especially in the context of those two types of restrictions, to determine whether it matters which type Subsection (d) created. Because our answer will be that it does matter, we will then analyze which type of restriction period that subsection created.

### A. Statutes of Limitations and Statutes of Repose

Civil statutes of limitations and statutes of repose are both time-based restrictions that can bar proceeding on a cause of action. *CTS Corp. v. Waldburger*, 573 U.S. 1, 7 (2014) ("Statutes of limitations and statutes of repose both are mechanisms used to limit the temporal extent or duration of liability for tortious acts."). As such, they have several overlapping features, such as establishing time periods within which certain types of actions must be filed after an identifiable triggering event. Although there are distinct features more commonly associated with one of these types of restriction than the other, the ability to blend features of each in a single statute means that it is not always easy to tell which one a legislative body intended to adopt.

A bit more than a decade ago, recognizing that our case law had been inconsistent in describing the two types of restrictions, we set out to analyze the typical distinctions between them and establish a framework for courts to use in distinguishing them. *See Anderson v. United States*, 427 Md. 99, 106 (2012). The issue in *Anderson* was whether

11

§ 5-109(a)(1) of the Health-General Article, which establishes a time restriction on medical malpractice claims, is a statute of repose or a statute of limitations. *Id.* at 102-03. In prior opinions, we had described it as both, each on multiple occasions. *Id.* at 106-17. Although acknowledging that the lines of distinction are often unclear and inconsistent, we nonetheless identified typical points of distinction in areas including purpose, operation, trigger, and tolling. We will address each in turn.

Purpose. A statute of limitations is typically adopted "to encourage prompt resolution of claims, to suppress stale claims, and to avoid the problems associated with extended delays in bringing a cause of action, including missing witnesses, faded memories, and the loss of evidence." *Id.* at 118. Statutes of limitations thus "promote judicial economy and fairness[.]" *Id.* They are "enacted in an effort to balance the competing interests of potential plaintiffs, potential defendants, and the public." *Pennwalt Corp. v. Nasios*, 314 Md. 433, 437 (1988). In doing so, they "are designed to (1) provide adequate time for diligent plaintiffs to file suit, (2) grant repose[8] to defendants when

---

[8] Some of the confusion concerning the differences between statutes of limitations and statutes of repose has undoubtedly accompanied the overlapping use of terms, including the use of the word "repose" in describing a design of a statute of limitations. *See, e.g.*, *Marsheck v. Board of Trustees*, 358 Md. 393, 405 (2000) (stating that by "closing a window" on bringing a claim, "the statute of limitations grants repose to potential defendants"); *Pennwalt Corp.*, 314 Md. at 437 (stating that statutes of limitations are designed to, among other things, "grant repose to defendants"); *Pierce v. Johns-Manville Sales Corp.*, 296 Md. 656, 667-68 (1983) (referring to adoption of the discovery rule for a particular class of claims as a "partial infringement of the right to repose" in a statute of limitations); *Harig v. Johns-Manville Prods. Corp.*, 284 Md. 70, 80 (1978) (describing "the desire for repose" as an interest served by a statute of limitations). As we will discuss, that a statute of limitations may provide "repose" to a defendant does not give it the effect of a

12

plaintiffs have tarried for an unreasonable period of time, and (3) serve society by promoting judicial economy." *Id.* at 437-38 (quoting *Pierce v. Johns-Manville Sales Corp.*, 296 Md. 656, 665 (1983)). Importantly, "[s]tatutes of limitations find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles." *Pierce*, 296 Md. at 664-65 (quoting *Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 314 (1945)).

In contrast, "[t]he purpose of a statute of repose is to provide an absolute bar to an action or to provide a grant of immunity to a class of potential defendants after a designated time period." *Anderson*, 427 Md. at 118. A statute of repose thus "shelters legislatively[ ]designated groups from an action after a certain period of time." *Id.* "Statutes of repose are based on considerations of the economic best interests of the public as a whole[.]" *First United Methodist Church of Hyattsville v. U.S. Gypsum Co.*, 882 F.2d 862, 866 (4th Cir. 1989). They represent principles, rather than expedients.

To be sure, "there is substantial overlap between the policies of the two types of statute[.]" *Waldburger*, 573 U.S. at 8. Both encourage plaintiffs to bring claims in a timely manner, provide some measure of repose to defendants, and are based on a balancing of the interests of the parties and society. But "each has a distinct purpose[.]" *Id.* Statutes of limitations are procedural mechanisms that require plaintiffs to pursue claims with

---

statute of repose. That is because the repose provided by a statute of limitations is the product of a procedural restriction intended primarily to serve other goals while the repose provided by a statute of repose is the goal itself.

13

diligence. They "promote justice by preventing surprises through [plaintiffs'] revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Id.* (quoting *R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944)). They "represent a public policy about the privilege to litigate." *Chase Sec. Corp.*, 325 U.S. at 314. Statutes of repose advance some of the same objectives, but for a different purpose: to "effect a legislative judgment that a defendant should 'be free from liability after the legislatively determined period of time.'" *Waldburger*, 573 U.S. at 9 (quoting 54 C.J.S., Limitations of Actions § 7, p. 24 (2010)).

Operation. The different purposes of statutes of repose and statutes of limitations are reflected in differences in how each typically operates. Statutes of limitations are remedial or procedural devices that "do not create any substantive rights in a defendant to be free from liability." *Anderson*, 427 Md. at 118. They therefore "are generally understood to extinguish the *remedy* for enforcing a right, not the right itself." *Park Plus, Inc. v. Palisades of Towson, LLC*, 478 Md. 35, 54 (2022); *see also First United Methodist Church*, 882 F.2d at 866 ("A statute of limitations is a procedural device that operates as a defense to limit the remedy available from an existing cause of action."). In other words, "[a] statute of limitations . . . neither creates a right of action nor pertains to the merits of a cause of action; rather, it regulates the plaintiff's exercise of that right." *Murphy v. Liberty Mut. Ins. Co.*, 478 Md. 333, 375 (2022); *see also Doe v. Roe*, 419 Md. 687, 706 (2011) (contrasting "an ordinary statute of limitations," which limits only a remedy, with a statute of limitations period that "is stipulated in a statute creating a cause of action," which is "a

14

limitation upon the right as well as the remedy" (quoting *Blocher v. Harlow*, 268 Md. 571, 581 (1973))); *Rios v. Montgomery County*, 386 Md. 104, 127 (2005) ("[A] statute of limitations affects only the remedy, not the cause of action." (quoting *Waddell v. Kirkpatrick*, 331 Md. 52, 59 (1993))).[9]

Statutes of repose, by contrast, "create a substantive right protecting a defendant from liability[.]" *Anderson*, 427 Md. at 120. They are the product of a legislative balancing of "the economic best interests of the public against the rights of potential plaintiffs," to determine an amount of time "after which liability no longer exists." *Id.* at 121; *see also First United Methodist Church*, 882 F.2d at 866 (stating that a statute of repose, unlike a statute of limitations, "is typically an absolute time limit beyond which liability no longer exists"). "Like a discharge from bankruptcy, a statute of repose can be said to provide a fresh start or freedom from liability." *Waldburger*, 573 U.S. at 9. The running of a statute

---

[9] We recognize that this Court has on occasion referred loosely to the effect of a statute of limitations as barring a cause of action. *See, e.g.*, *Litz v. Maryland Dep't of Env't*, 434 Md. 623, 641 (2013) (referring to a "cause of action [that] is barred by the statute of limitations"); *Rounds v. Maryland-Nat'l Cap. Park & Plan. Comm'n*, 441 Md. 621, 655 (2015) ("[A] cause of action is barred by the statute of limitations unless it is clear from the facts and allegations on the face of the complaint that the statute of limitations has run." (quoting *Litz*, 434 Md. at 641)); *Rullman v. Rullman*, 148 Md. 140, 143 (1925) ("[T]he cause of action had become barred, if the period of limitations applicable to this case was three years[.]"). In doing so, we were imprecise. In most cases, the difference between barring a cause of action and barring access to a remedy for a cause of action is insignificant. The effect of both is that the claim cannot proceed. Imprecise statements in those decisions that are inconsistent with the greater body of our jurisprudence are not controlling.

15

of repose extinguishes the cause of action, not just the remedy. *Anderson*, 427 Md. at 120-21.

Trigger. Statutes of limitations and statutes of repose are also distinguished by their respective triggering events. *Id.* at 118. The trigger for a statute of limitations is "typically . . . the accrual of a claim," which is most often the occurrence or discovery of injury. *Id.* By contrast, the trigger for a statute of repose is "unrelated to when the injury or discovery of the injury occurs." *Id.* at 118-19. That trigger is an unrelated "event, act, or omission," *id.*, often "the last culpable act or omission of the defendant," *Waldburger*, 573 U.S. at 8. Because the trigger for a statute of repose is unrelated to accrual, such a statute may even extinguish a "right to bring a claim before the cause of action accrues." *Anderson*, 427 Md. at 119.

"In common parlance, statutes of limitation[s] and statutes of repose are differentiated consistently and confidently by whether the triggering event is an injury or an unrelated event; the latter applying to a statute of repose." *Id.*; *see also Mathews v. Cassidy Turley Maryland, Inc.*, 435 Md. 584, 611-12 (2013) ("The chief feature of a statute of repose is that it runs from a date that is unrelated to the date of injury, whereas a statute of limitations always runs from the time the wrong is complete and actionable—and injury is always the final element of a wrong."). Thus, in *Anderson*, we identified the triggers as the "key difference" between two statutes of repose on the one hand, § 5-108(a) and (b) of the Courts and Judicial Proceedings Article (using a trigger of "the date the entire

16

improvement first becomes available for its intended use"), and a statute of limitations on the other, § 5-108(c) (using a trigger of "accrual of a cause of action").[10]  *Id.* at 122.

Tolling.  Also reflective of their different purposes, statutes of limitations are generally subject to tolling during the plaintiff's minority and for fraudulent concealment, while statutes of repose are not.  *Id.* at 118.  The United States Supreme Court referred to this as a "central distinction between statutes of limitations and statutes of repose [that] underscores their differing purposes."  *Waldburger*, 573 U.S. at 9 ("Statutes of limitations, but not statutes of repose, are subject to equitable tolling," whereas statutes of repose "generally may not be tolled, even in cases of extraordinary circumstances beyond a plaintiff's control.").  The difference arises because the "main thrust" of a statute of

---

[10] The relevant provisions of § 5-108 are:

(a) Except as provided by this section, no cause of action for damages accrues and a person may not seek contribution or indemnity for damages incurred when wrongful death, personal injury, or injury to real or personal property resulting from the defective and unsafe condition of an improvement to real property occurs more than 20 years *after the date the entire improvement first becomes available for its intended use.*

(b) Except as provided by this section, a cause of action for damages does not accrue and a person may not seek contribution or indemnity from any architect, professional engineer, or contractor for damages incurred when wrongful death, personal injury, or injury to real or personal property, resulting from the defective and unsafe condition of an improvement to real property, occurs more than 10 years *after the date the entire improvement first became available for its intended use.*

(c) *Upon accrual of a cause of action* referred to in subsections (a) and (b) of this section, an action *shall be filed* within 3 years.

Cts. & Jud. Proc. § 5-108(a), (b), (c) (emphasis added).

17

limitations "is to encourage the plaintiff to 'pursu[e] his rights diligently,' and when an 'extraordinary circumstance prevents him from bringing a timely action,' the restriction imposed by the statute of limitations does not further the statute's purpose."[11] *Id.* at 10 (quoting *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014)). By contrast, "a statute of repose is a judgment that defendants should 'be free from liability after the legislatively determined period of time, beyond which the liability will no longer exist and will not be tolled for any reasons.'" *Id.* (quoting 54 C.J.S., Limitations of Actions § 7, at 24 (2010)); *see also First United Methodist Church*, 882 F.2d at 866 (stating that unlike a statute of limitations, "a statute of repose is typically an absolute time limit . . . and is not tolled for any reason because doing so would upset the economic balance struck by the legislative body").

Recognizing the "overlapping features" of statutes of repose and statutes of limitations, and the numerous and varied definitions in the case law of each, we concluded in *Anderson* that "[t]here is, apparently, no hard and fast rule to use as a guide" in determining whether a particular statute creates one versus the other. 427 Md. at 123. We concluded that it was therefore inappropriate to rely on any single feature of a restriction,

---

[11] This is the same logic that our predecessors employed to apply the discovery rule to toll the running of a statute of limitations. *See, e.g.*, *Harig v. Johns-Manville Prods. Corp.*, 284 Md. 70, 80 (1978) ("Like the victim of undiscoverable malpractice a person incurring disease years after exposure cannot have known of the existence of the tort until some injury manifests itself. In neither case can the tort victim be charged with slumbering on his rights, for there was no notice of the existence of a cause of action.").

but that we would "look holistically at the statute and its history to determine whether it is akin to a statute of limitation[s] or a statute of repose." *Id.* at 123-24.

In *Anderson*, we recognized that the underlying legislative purpose was to help stem a crisis in the availability of medical malpractice insurance by cutting off claims against medical professionals after a certain period—providing repose to those defendants—which favored interpreting the provision as a statute of repose. *Id.* at 124. However, applying our holistic approach, we refused to give that purpose dispositive weight. *Id.* at 125. Instead, we stated that our reading would be controlled "[f]irst and foremost[ by] the plain language of the statute[.]" *Id.* at 125.

Turning to that plain language, we focused primarily on the trigger: the General Assembly's choice to run the statutory period from the victim's injury, rather than the medical professional's act or omission. Based largely on that feature, we concluded that the Legislature "chose . . . to adopt a statute of limitations." *Id.* To support that conclusion, we also looked to (1) statutory history, which revealed that the General Assembly considered and rejected a legislative change that would have "put in place a strict statute of repose," and (2) the General Assembly's choice to expressly allow tolling for fraudulent concealment. *Id.* at 125-26.

In sum, a statute of limitations is a remedial or procedural mechanism to encourage the diligent prosecution of claims and protect against unfairness and complication associated with stale claims by making a remedy unavailable to a plaintiff after a certain period. As such, a statute of limitations is ordinarily triggered by the accrual of a plaintiff's

19

cause of action and is subject to tolling. A statute of repose creates a substantive right in a particular class of defendants to be immune from suit upon the passage of a period that is unrelated to the plaintiff's injury and typically tied to a relevant act or omission of the defendant. In broad strokes, a statute of limitations is predominantly plaintiff-focused, establishing the timeframe during which a plaintiff may resort to the courts to pursue a cause of action for damages. A statute of repose, on the other hand, is primarily defendant-focused, establishing a period after which a defendant is entitled to be free of a claim. *See Waldburger*, 573 U.S. at 8-9 (observing each type of restriction is "targeted at a different actor").

## B. Vested Rights Jurisprudence

Having explored differences between the two types of restriction periods, we now consider whether it ultimately matters how Subsection (d) is classified. The answer turns on whether either or both restrictions create a vested right to be free of liability upon the running of the prescribed period. As to both statutes of limitations and statutes of repose, this is a question of first impression in Maryland.

### 1. Vested Rights in Tangible Property and Contracts

As an initial matter, "substantive rights" and "vested rights" are not synonyms. As we have explained, "[a] law is substantive if it creates rights, duties and obligations, while a remedial or procedural law simply prescribes the methods of enforcement of those rights." *Langston v. Riffe*, 359 Md. 396, 419 (2000) (alteration in original) (quoting 2 Norman J. Singer, *Sutherland's Statutory Construction* § 41.09, at 56 (1999 Supp.)).

"The definition of 'vested rights' is more tricky." *Id.* at 419. Common definitions of "vested rights" are "essentially circuitous in nature," characterizing rights as vested when they are deemed worthy of recognition and protection "from legislative interference." *Id.* at 420 (quoting 2 Singer, §§ 41.05, 41.06, at 369-70, 379). "Vested right" is thus a "conclusory" term used to describe a right that "has been so far perfected that it cannot be taken away by statute." *Id.* (quoting *Washington Nat'l Arena Ltd. P'ship v. Treasurer*, 287 Md. 38, 46 n.4 (1980)).

"A vested right is 'something more than a *mere expectation* based on the anticipated continuance of the existing law; *it must have become a title*, legal or equitable, to the present or future enjoyment of a property.'" *Muskin v. State Dep't of Assessments & Tax'n*, 422 Md. 544, 560 (2011) (quoting *Allstate Ins. Co. v. Kim*, 376 Md. 276, 298 (2003)). Our case law has identified vested rights most frequently in connection with tangible property interests and present contractual rights, including in:

- the ownership of real property, *Thistle v. Frostburg Coal Co.*, 10 Md. 129, 144-45 (1856) (finding unconstitutional the retroactive application of an alteration in the law of adverse possession that would have resulted in the transfer of real property); *Berrett v. Oliver*, 7 G. & J. 191, 206-07 (Md. 1835) (finding void the retroactive application of a statute vacating and annulling deeds);

- the property rights of a ground rent owner, *Muskin*, 422 Md. at 560;

- the right to property devised in a will upon the testator's death, *Remington v. Metro. Sav. Bank of Balt.*, 76 Md. 546, 547-48 (1893); *Garrison v. Hill*, 81 Md. 551, 557 (1895); *Wilderman v. Mayor & City Council of Balt.*, 8 Md. 551, 556 (1855);

- rights created by valid deeds of trust, *Dryfoos v. Hostetter*, 268 Md. 396, 408 (1973) (holding that it would be unconstitutional to permit a curative statute to

21

give priority to a defective deed of trust over that of proper deeds of trust, even though the latter were originally intended to have lower priority);

- rights created by existing contracts, *State, use of Isaac v. Jones*, 21 Md. 432, 437 (1864) (stating that the "abrogation or suspension of a remedy, necessary to enforce the obligation of an existing contract, . . . is . . . void");

- the right in the continuing invalidity of a void deed, *Grove v. Todd*, 41 Md. 633, 642 (1875);

- the right to receipt of a sum of money owed, *Bramble v. State, use of Twilley*, 41 Md. 435, 442 (1875); and

- the right to maintain the settled consequences of completed financial transactions, *see, e.g.*, *Vytar Assocs. v. Mayor & Aldermen of City of Annapolis*, 301 Md. 558, 574 (1984) (holding invalid the retroactive application of legislation imposing rental dwelling license fees); *Washington Nat'l Arena*, 287 Md. at 55 (holding unconstitutional the retroactive application of a statute increasing property tax rates); *Cooper v. Wicomico County*, 284 Md. 576, 584 (1979) (holding unconstitutional statutory attempts to retroactively increase amounts payable under prior worker's compensation awards).

The asserted right at issue here is to be free from liability for past alleged tortious conduct. The Institutions argue that this asserted right is analogous to a plaintiff's right in an accrued cause of action, which this Court has long recognized as a vested right, *see, e.g.*, *Dua*, 370 Md. at 633; *Muskin*, 422 Md. at 561-62, albeit one that is "not as important" as vested real property and contractual rights, *see Muskin*, 422 Md. at 561-62 (stating that "[v]ested causes of action . . . are not as important as the vested real property and contractual rights which have been almost sacrosanct in our history"). Accordingly, we turn next to our case law addressing vested rights in accrued causes of action.

### 2. Vested Rights in an Accrued Cause of Action

An accrued cause of action or "chose in action" is a form of property. *Hoffman Chevrolet, Inc. v. Washington Co. Nat'l Savings Bank*, 297 Md. 691, 701 n.4 (1983). We

most recently and comprehensively analyzed vested rights in accrued causes of action in

*Dua*, in which we addressed two statutes that the General Assembly had enacted and given

retroactive effect in response to decisions of this Court.[12]   370 Md. at 610-11.   We

concluded that the retroactive application of both provisions was unconstitutional because

there is a "vested property right in a cause of action which has accrued[.]"  *Id.* at 633, 642.

In doing so, we rejected the approach taken by federal courts, under which retroactive civil

legislation may be sustained if it has a rational basis.  *Id.* at 623.  We concluded that

approach was inconsistent with this Court's prior holdings "that the Constitution of

Maryland prohibits legislation which retroactively abrogates vested rights."  *Id.*  Under

Maryland precedent, we observed, the only relevant constitutional question "is whether

vested rights are impaired[.]"  *Id.*

---

[12] One of the statutes purported to retroactively authorize late fees in certain consumer contracts.  *Dua*, 370 Md. at 611-12.  That was in response to this Court's decision in *United Cable Television of Baltimore, Ltd. v. Burch*, in which we held that the measure of damages for late payment at common law was limited to "the amount of money promised to be paid, with legal interest."  354 Md. 658, 669 (1999) (quoting 1 J.P. Poe, *Pleading and Practice in the Courts of Law in Maryland* § 584C, at 608 (5th Tiffany ed. 1925)). Accordingly, we held that cable television providers who charged higher fees were required to provide a refund.  *Id.* at 685.

The second statute at issue in *Dua* retroactively authorized health maintenance organizations ("HMOs") to be subrogated to their subscribers' rights against third party tortfeasors.  370 Md. at 614-15.  That was in response to this Court's decision in *Riemer v. Columbia Medical Plan, Inc.*, in which we held that HMOs had no common law right to pursue subscribers for subrogation based on the subscribers' financial settlement with a third-party tortfeasor.  358 Md. 222, 258 (2000).

With respect to both statutes, the challenge was not to the General Assembly's authority to abrogate the common law; only its ability to do so with retroactive effect.

As support for our conclusion that "there normally is a vested property right in a cause of action which has accrued prior to the legislative action," we relied primarily on cases in which we had held that laws shortening statutes of limitations or "plac[ing] other restrictions on causes of action" can be applied retroactively only if they provide "a reasonable period of time, after the enactment of the new statute, to bring the [accrued] cause of action[.]" *Id.* at 633 (discussing cases); *see also, e.g.*, *Baugher v. Nelson*, 9 Gill 299, 309 (1850) ("[A]n Act which divests a right through the instrumentality of the remedy, and under the pretence of regulating it, is as objectionable as if aimed at the right itself."). In other words, the holder of a vested right in an accrued cause of action is entitled to a reasonable opportunity to bring the claim, but no more than that.

We also relied on our decision in *Williar v. Baltimore Butchers' Loan & Annuity Association*, 45 Md. 546 (1877), in which we held that the General Assembly could not retroactively eliminate a borrower's accrued cause of action to recover interest. *Dua*, 370 Md. at 636-38; *Williar*, 45 Md. at 560 ("A vested right of action is property in the same sense in which tangible things are property, and is equally protected against arbitrary interference." (quoting Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union* 362 (3d ed. 1874))).

In sum, *Dua* and the cases on which it relies stand for the proposition that there is a vested right in an accrued cause of action. But the constitutional protection even for an accrued cause of action—an existing, actionable property right—extends only to ensuring

24

a reasonable opportunity to file suit, after which all remedies may be precluded. Here, we are confronted not with an accrued cause of action but with a defense to causes of action that, at the time the 2023 Act became effective, had long been accrued but had never been brought.

### 3. Vested Rights and Statutes of Limitations

This Court has never squarely addressed whether reviving a claim that is time-barred by an ordinary statute of limitations abrogates a vested right. We have, however, made a handful of statements that have been interpreted by some as weighing in on that issue. We will begin with those.

First, although the issue in *Dua* was whether the General Assembly could retroactively abolish accrued causes of action, our predecessors also observed, in dicta, that "[t]his Court has consistently held that the Maryland Constitution ordinarily precludes the Legislature . . . from retroactively creating a cause of action, or reviving a barred cause of action, thereby violating the vested right of the defendant." 370 Md. at 633. The Institutions interpret the reference to "reviving a barred cause of action" as including the revival of a claim barred by an ordinary statute of limitations. We interpret it differently.

The relevant portion of our predecessors' observation in *Dua* was based on *Smith v. Westinghouse Electric Corp.*, 266 Md. 52 (1972). The issue in *Smith* was whether a retroactive expansion of the statute of limitations *embedded in the wrongful death statute* was constitutional as applied to a claim that was time-barred before the expansion took effect. *Id.* at 55. In determining that it was not, our rationale turned on the special character

25

of the statute of limitations at issue. We determined that the limitations period in the wrongful death statute was "a condition precedent to the right to maintain the action," not "merely a limitation on the time within which the action should be brought[.]"[13] *Id.* at 55-56. In other words, unlike an ordinary statute of limitations, the running of the limitations period in the wrongful death statute eliminated the cause of action. As such, a retroactive expansion of the limitations period in that case would have impermissibly revived the barred cause of action, not just a barred remedy. *Id.* at 56-57. Our opinion in *Smith* did not mention, much less resolve, any issue pertaining to an ordinary statute of limitations. Our observation in *Dua* thus applies, as it says, to statutes that purport to "reviv[e] a barred cause of action," not barred remedies for extant causes of action.

Second, following *Dua*, in *Allstate Insurance Co. v. Kim*, we repeated the same observation we made in *Dua* in analyzing whether the General Assembly's retroactive abrogation of the parent-child immunity doctrine in motor vehicle tort cases "ha[d], in effect, retroactively created a cause of action and thereby violated a vested right of Allstate." 376 Md. 276, 296 (2003). We ultimately adopted the view that the General Assembly's change did not abrogate a vested right because the right to assert the immunity doctrine as a defense to liability did not vest until a lawsuit was filed in which the defense

---

[13] We have consistently taken the same approach to other statutes in which limitations periods are included in the statute creating the cause of action. For example, in *Blocher v. Harlow*, 268 Md. 571, 581 (1973), we observed that "[t]here is a substantial body of law to the effect that where a limitation period is stipulated in a statute creating a cause of action it is not to be considered as an ordinary statute of limitations, but is to be considered as a limitation upon the right as well as the remedy[.]"

26

could be asserted.[14]  *Id.* at 298.  We took care, however, to limit our holding to the parent-child immunity doctrine, without suggesting whether the same reasoning would apply to other defenses.  *Id.*

Third, in *Doe v. Roe*, we interpreted the General Assembly's 2003 expansion of the limitations period for child sexual abuse claims from three years to seven years.  419 Md. 687, 689 (2011).  Concluding that the statutory change was remedial, we held that it should be interpreted to apply retroactively to a claim for which the prior limitations period had not yet expired as of the effective date of the change.  *Id.* at 703.  In dicta, we stated that we "would be faced with a different situation entirely" if the plaintiff's "claim had been barred under the [prior] three-year limitations period" as of the effective date of the change.  *Id.* at 707.  In a footnote to that sentence, we observed that even "a remedial or procedural statute may not be applied retroactively if it will interfere with vested or substantive rights."  *Id.* at 707 n.18 (quoting *Rawlings v. Rawlings*, 362 Md. 535, 559 (2001)).  However, because the issue was not presented, we "express[ed] no holding" on it.  *Id.* at 707.

---

[14] A factor in our analysis was that "[i]mmunities are not favored in the law, and this one, in particular, has been under challenge, in both this Court and the Legislature, for several years."  *Allstate*, 376 Md. at 298.  The same is true of the defense of statute of limitations, at least as applied here.  First, "[t]he statute of limitations, as a defense that does not go to the merits, is disfavored in law and is to be strictly construed."  *Newell v. Richards*, 323 Md. 717, 728 (1991) (citing *McCormick on Evidence* § 337, at 949-50 (E. Cleary, 3d ed. 1984)); *see also Marsheck v. Bd. of Trs.*, 358 Md. 393, 405 (2000) (quoting *Newell* and opining that the disfavored status "makes sense if we remember that '[s]tatutes of limitation[s] find their justification in necessity and convenience rather than in logic.  They represent expedients rather than principles.'" (quoting *Doe v. Maskell*, 342 Md. 684, 690 (1996))).  Second, as discussed, the statute of limitations as applied to child sexual abuse claims has been under challenge in the General Assembly for several years.

27

In sum, this Court has never had occasion to determine whether the expiration of an ordinary statute of limitations creates a vested right to be free of liability. We hold that there is no such vested right. As discussed, an ordinary statute of limitations is a procedural device primarily intended to encourage the prompt resolution of claims and promote fairness by requiring suit to be filed while evidence is still likely to be available and untainted by the passage of too much time. It reflects a legislative determination to block access to a remedy for a cause of action that otherwise continues to exist after a designated period, not to absolve defendants from accountability. *Id.* at 703-04.

Our case law has long recognized that an ordinary statute of limitations is addressed only to the remedy for a cause of action, not the cause of action itself. *See* discussion above at 14-15. It follows that the cause of action continues to exist and to be subject to legislative regulation.[15] *Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 314 (1945) (stating that a

---

[15] Other states vary in their approaches to this question. At least 18 states permit revival of at least some claims previously barred by a statute of limitations. In 11 of those states, courts have held that the revival of such claims does not run afoul of their respective due process clauses because statutes of limitations do not create vested rights in defendants. *See Chevron Chem. Co. v. Superior Ct.*, 641 P.2d 1275, 1282, 1284 (Ariz. 1982); *Doe v. Hartford Roman Cath. Diocesan Corp.*, 119 A.3d 462, 516 (Conn. 2015); *Sheehan v. Oblates of St. Francis de Sales*, 15 A.3d 1247, 1259 (Del. 2011); *Vaughn v. Vulcan Materials Co.*, 465 S.E.2d 661, 662 (Ga. 1996); *Harding v. K.C. Wall Prods., Inc.*, 831 P.2d 958, 968 (Kan. 1992); *City of Boston v. Keene Corp.*, 547 N.E.2d 328, 335 (Mass. 1989); *In re Individual 35W Bridge Litig.*, 806 N.W.2d 820, 831-33 (Minn. 2011); *Cosgriffe v. Cosgriffe*, 864 P.2d 776, 779 (Mont. 1993); *Bernard v. Cosby*, 648 F. Supp. 3d 558, 571 (D.N.J. 2023); *McKinney v. Goins*, 892 S.E.2d 460, 471-72, 477 (N.C. Ct. App. 2023); *Vigil v. Tafoya*, 600 P.2d 721, 723-25 (Wyo. 1979). Most of those states read their due process clauses as co-extensive with the Fourteenth Amendment to the United States Constitution. At least two, Connecticut and Delaware, are rational basis review states. *Hartford Roman*, 119 A.3d at 517; *Sheehan*, 15 A.3d at 1259. In three states—New

statute of limitations provides "protection of the policy while it exists, but" which is "good only by legislative grace and" is "subject to a relatively large degree of legislative control").

We recognize that some parties, after receiving a "certain degree of repose" from a statute of limitations, *Pierce v. Johns-Manville Sales Corp.*, 296 Md. 656, 665 (1983), may

---

York, Louisiana, and Wisconsin—revival of claims previously barred by a statute of limitations is permitted under the state due process clauses if revival satisfies a specific balancing test. *See In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 89 N.E.3d 1227, 1243 (N.Y. 2017); *Bienvenu v. Defendant 1*, 386 So. 3d 280, 290 (La. 2024); *Soc'y Ins. v. Lab. & Indus. Rev. Comm'n*, 786 N.W.2d 385, 396 (Wis. 2010). Other states have analyzed the issue only under the due process guarantee in the Fourteenth Amendment to the United States Constitution. *See 20th Century Ins. Co. v. Superior Ct.*, 90 Cal. App. 4th 1247, 1273 & n.30 (2001); *Peterson v. Peterson*, 320 P.3d 1244, 1250 (Idaho 2014); *Orman v. Van Arsdell*, 78 P. 48, 48-49 (N.M. 1904); *Roe v. Doe*, 581 P.2d 310, 316 (Haw. 1978).

At least 21 states forbid revival of claims barred by a statute of limitations. In ten of those states, revival of such claims runs afoul of state due process clauses. *See Johnson v. Lilly*, 823 S.W.2d 883, 885 (Ark. 1992); *Wiley v. Roof*, 641 So. 2d 66, 68 (Fla. 1994); *Doe A. v. Diocese of Dallas*, 917 N.E.2d 475, 484-86 (Ill. 2009); *Thompson v. Killary*, 683 S.W.3d 641, 647-49 (Ky. 2024); *Givens v. Anchor Packing, Inc.*, 466 N.W.2d 771, 772-74 (Neb. 1991); *Kelly v. Marcantonio*, 678 A.2d 873, 883 (R.I. 1996); *Doe v. Crooks*, 613 S.E.2d 536, 538 (S.C. 2005); *State of Minn. ex rel. Hove v. Doese*, 501 N.W.2d 366, 370 (S.D. 1993); *Kopalchick v. Cath. Diocese of Richmond*, 645 S.E.2d 439, 440-43 (Va. 2007); *Mitchell v. Roberts*, 469 P.3d 901, 903 (Utah 2020). Eight states forbid revival based on state constitutional provisions that expressly forbid retroactive laws or claim revival, though a similar "vested rights" analysis is often applied. *See Johnson v. Garlock, Inc.*, 682 So. 2d 25, 27-28 (Ala. 1996); *Aurora Pub. Schs. v. A.S.*, 531 P.3d 1036, 1047-48 (Colo. 2023); *Cole v. Nat'l Life Ins. Co.*, 549 So. 2d 1301, 1305, 1307 (Miss. 1989); *Doe v. Roman Cath. Diocese of Jefferson City*, 862 S.W.2d 338, 341-42 (Mo. 1993); *Gould v. Concord Hosp.*, 493 A.2d 1193, 1195-96 (N.H. 1985); *Wright v. Keiser*, 568 P.2d 1262, 1267 (Okla. 1977); *Ford Motor Co. v. Moulton*, 511 S.W.2d 690, 695 (Tenn. 1974); *Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 4-5 (Tex. 1999). In Indiana and Pennsylvania, the analysis does not appear grounded in any state constitutional provision. *Skolak v. Skolak*, 895 N.E.2d 1241, 1243 (Ind. Ct. App. 2008); *Commonwealth v. Riding*, 68 A.3d 990, 994 (Pa. Super. Ct. 2013). In Vermont, claim revival is forbidden by statute. *See Murray v. Luzenac Corp.*, 830 A.2d 1, 3 (Vt. 2003).

29

alter their behavior in reliance on the anticipated continuation of that limitation. That, however, does not give rise to a *vested* right.[16] *See, e.g.*, *Muskin v. State Dep't of Assessments & Tax'n*, 422 Md. 544, 560 (2011) ("A vested right is 'something more than a mere expectation based on the anticipated continuance of the existing law; *it must have*

---

[16] Although we have not previously reached this issue directly, several cases in which we have described one purpose of a statute of limitations as providing "repose" to defendants, *see* discussion above at n.8, suggest that repose in the limitations context was not viewed as a vested right. First, in *Harig v. Johns-Manville Products Corp.*, our predecessors considered whether to apply the discovery rule to the accrual of a plaintiff's cause of action for latent disease. 284 Md. 70, 71 (1978). In doing so, the Court departed from the existing "general rule," which was "that limitations against a right or cause of action begin to run from the date of the alleged wrong and not from the time the wrong is discovered." *Id.* at 76. That ruling thus had the effect of extending the limitations period for causes of action that had previously been time-barred under the application of existing law, in some cases for decades. *See id.* at 71 (stating that exposure to asbestos ended in 1955 and suit was filed in 1977).

Second, in determining how to resolve issues in which the answer would determine whether a claim would be time-barred by a statute of limitations, the Court has engaged in a balancing of the plaintiffs' interest in being able to prosecute claims, the defendants' interest in repose, and the public interest. In reaching resolutions, our predecessors have often acknowledged that the defendants' interest in repose would be adversely impacted but determined that other interests outweighed it. *See Pennwalt Corp. v. Nasios*, 314 Md. 433, 456 (1988) (in determining that a statute of limitations does not begin to run until a plaintiff has knowledge of manufacturer wrongdoing in addition to possible causation, stating: "A weighing of these three interests in a products liability case dictates that fairness to diligent plaintiffs and the promotion of judicial efficiency outweigh defendants' interest in repose[.]"); *Pierce v. Johns-Manville Sales Corp.*, 296 Md. 656, 667-68 (1983) (in determining that a cause of action for damages resulting from lung cancer due to exposure to asbestos arose when the plaintiff was diagnosed with lung cancer and not at an earlier diagnosis of asbestosis, stating: "In our view, the partial infringement of the right to repose is far outweighed by the unfairness of barring a reasonably diligent person from recovery from a latent disease, and by a needless interference with the efficient operation of the judicial system."); *Harig*, 284 Md. at 80 (in extending the discovery rule to latent disease claims, stating: "Avoiding possible injustice in such cases outweighs the desire for repose and administrative expediency, which are the primary underpinnings of the limitations statute.").

30

*become a title*, legal or equitable, *to the present or future enjoyment of a property*[.]'" (quoting *Allstate*, 376 Md. at 298)).  Unless and until a right has become vested, there is no enforceable reliance interest in its existence.

Notably, however, it is relatively rare for the General Assembly to extend an existing limitations period, and extremely rare, perhaps unprecedented, for it to retroactively eliminate one.  Doing so has serious implications for the fairness of cases in which defendants may lack access to evidence to assess the claims against them or mount a defense.  *See Pennwalt Corp.*, 314 Md. at 455 ("The inconvenience and unfairness to defendants that occur because of delay in bringing suit is primarily due to the loss of evidence, fading of memories, and disappearance of witnesses.").  As such, it is reasonable to expect the General Assembly to tread very carefully when considering the retroactive application of an expansion or elimination of a statute of limitations, and to do so only to advance substantial interests.  We will have more to say on that later.

### 4. *Vested Rights and Statutes of Repose*

We reach a different conclusion with respect to whether the running of a statute of repose creates a vested right in a defendant.  Statutes of repose create substantive rights with the purpose of protecting the defendant from liability.  *Anderson*, 427 Md. at 120.  And they do not merely render a remedy to a cause of action unavailable; they eliminate the cause of action itself. *Id.* at 119-20.  They therefore create a substantive immunity that is the very purpose of the restriction, not a byproduct of a desire to promote the swift resolution of claims and to avoid unfairness in the prosecution of stale claims.

31

Accordingly, a defendant protected by such a statute has a vested right to be free of liability.[17] *See Duffy v. CBS Corp.*, 232 Md. App. 602, 622-24 (2017) (holding that the revival of a cause of action barred by a statute of repose was unconstitutional), *rev'd on other grounds by Duffy v. CBS Corp.*, 458 Md. 206 (2018).

In sum: (a) the Constitution of Maryland prohibits the retroactive abrogation of a vested right; (b) the running of an ordinary limitations period does not provide a potential defendant with a vested right in remaining free from liability; but (c) the running of a statute of repose period provides a potential defendant with a vested right in remaining free from liability. Accordingly, we must now resolve whether Subsection (d) established a statute of limitations or a statute of repose.

---

[17] Although courts in other states are split concerning whether a claim barred by a statute of limitations may be revived, *see* discussion above at n.15, the ten that have addressed the question have uniformly concluded that a cause of action barred by a statute of repose may not be revived. *See Agency for Health Care Admin. v. Associated Indus. of Florida, Inc.*, 678 So. 2d 1239, 1254 (Fla. 1996); *S. States Chem., Inc. v. Tampa Tank & Welding, Inc.*, 888 S.E.2d 553, 563-64 (Ga. 2023); *M.E.H. v. L.H.*, 685 N.E.2d 335, 339 (Ill. 1997); *Harding v. K.C. Wall Products, Inc.*, 831 P.2d 958, 967-68 (Kan. 1992); *Givens v. Anchor Packing, Inc.*, 466 N.W.2d 771, 772-74 (Neb. 1991); *Colony Hill Condo. I Ass'n v. Colony Co.*, 320 S.E.2d 273, 276 (N.C. Ct. App. 1984); *Theta Props. v. Ronci Realty Co.*, 814 A.2d 907, 917 (R.I. 2003); *Murray v. Luzenac Corp.*, 830 A.2d 1, 3 (Vt. 2003); *Commonwealth v. Owens-Corning Fiberglas Corp.*, 385 S.E.2d 865, 868 (Va. 1989).

### C.    Analysis of Subsection (d)

#### 1.  *Principles of Statutory Construction*

Determining whether Subsection (d) of the 2017 Act established a statute of limitations or a statute of repose requires an exercise in statutory construction.  As we stated recently in *Westminster Management, LLC v. Smith*:

> The goal of statutory construction is to discern and carry out the intent of the Legislature.  Our search for legislative intent begins with the text of the provision we are interpreting, viewed not in isolation but within the context of the statutory scheme to which it belongs.  Our review of the text is wholistic, seeking to give effect to all of what the General Assembly included and not to add anything that the General Assembly omitted.  In our analysis of statutory text, we therefore take the language as we find it, neither adding to nor deleting from it; we avoid forced or subtle interpretations; and we avoid constructions that would negate portions of the language or render them meaningless.  When statutory terms are undefined, we often look to dictionary definitions as a starting point, to identify the ordinary and popular meaning of the terms, before broadening our analysis to consider the other language of the provisions in which the terms appear and the statutory scheme as a whole, including any legislative purpose that is discernible from the statutory text.  Presuming the General Assembly intends its enactments to operate together as a consistent and harmonious body of law, we also seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope.
>
> After exhausting the tools available for our textual analysis, viewed in context of the statutory scheme and in light of apparent legislative purpose, we determine whether the statute is ambiguous.  Ambiguity can arise in two different ways:  Where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme.  If neither applies, our inquiry generally ceases at that point and we apply the statute as written.  If, however, the statute is ambiguous, we seek to resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process.  Such sources include the derivation of the statute, comments and explanations

regarding it by authoritative sources during the legislative process, and amendments proposed or added to it.

Finally, in every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense. When one interpretation of statutory language would produce such a result, we will reject that interpretation in favor of another that does not suffer the same flaw.

486 Md. 616, 644-46 (2024) (footnote, internal citations and quotation marks, and brackets omitted).

### 2. *Plain Language and Context*

The language we are interpreting is Subsection (d), which provided:

In no event may an action for damages arising out of an alleged incident or incidents of sexual abuse that occurred while the victim was a minor be filed against a person or governmental entity that is not the alleged perpetrator more than 20 years after the date on which the victim reaches the age of majority.

We are interested in other language in the 2017 Act but only to the extent it informs the proper interpretation of Subsection (d), because it is Subsection (d) that established the restriction period whose nature we must determine.

The Institutions' plain language argument is primarily focused on the General Assembly's use of the terms "statute of repose" and "repose" in other, uncodified provisions in the 2017 Act in reference to the period created in Subsection (d). Our analysis in *Anderson*, by contrast, focuses on the plain language of the operative provisions of the statute, specifically as they relate to distinguishing features of statutes of limitations and statutes of repose. Our plain language analysis is ordinarily focused on what a statute does,

34

not on the labels that are attached to it.[18] *See, e.g.*, *Martin v. Howard County*, 349 Md. 469, 488 (1998) (declining to afford significance to label attached to a statutory cause of action in determining whether the action was legal or equitable); *State v. Jones*, 340 Md. 235, 261 (1995) ("The [United States] Supreme Court has not treated the labels attached to a statute by the legislature as strong indicators of that statute's purpose."); *see also CTS Corp. v. Waldburger*, 573 U.S. 1, 13-14 (2014) (explaining that a label "is not dispositive" when assessing whether a provision is a statute of limitations or statute of repose, in part

---

[18] Sharing the Institutions' focus, Justice Biran says that this opinion "fails to recognize that the General Assembly may create a 'statute of repose' with any set of features it deems appropriate." Dissenting Op. of Biran, J., at 14. In doing so, Justice Biran conflates the type of restriction legally categorized as a 'statute of repose' with one specific consequence of enacting such a statute: the establishment of a vested right to be free from liability. Justice Biran treats the General Assembly's use of the term "statute of repose" to describe Subsection (d) in the 2017 Act as a declaration that the Legislature intended the provision to establish a vested right to be free from liability. But a statute of repose, as we set forth in *Anderson*, is a type of time-based restriction on bringing claims that typically has certain features. The establishment of a vested right in defendants to be free from future liability is a *consequence* of the creation of a statute of repose, not a feature of such a statute.

To the extent Justice Biran's point is that the General Assembly can create a time-based restriction on bringing claims containing none of the features typically associated with a statute of repose that also creates a vested right to be free from liability, we agree. Indeed, if the General Assembly were to state in such a law that the running of the period establishes a vested right in the potential defendant to be free of future liability, it would have that effect even if the General Assembly labeled it a statute of limitations.

Justice Biran's concern that this opinion will make it more difficult for the General Assembly to enact future legislation, slip op. at 30, is mistaken for the same reason. If the General Assembly wants to create a statute of repose with the typical features of such a statute, they are clearly identified in *Anderson* and in this opinion. If the General Assembly wants to create a time-based restriction on bringing claims with features that are not typical of a statute of repose but still have a consequence of the period expiring be the establishment of a vested right, it can say so.

35

because these terms have long been used imprecisely). We will address the labels the General Assembly used to describe Subsection (d) in other parts of the 2017 Act, but as context to assist in our plain language review, not as a substitute for it.

Subsection (d) contains three reasonably straightforward components. The opening phrase, "[i]n no event," establishes that this provision occupies a position of precedence. The provision itself does not say precedence over what, although, as we will see, subsection (b) is expressly made subject to Subsection (d). Subsection (d) then identifies what it regulates, which is the filing of child sexual abuse claims. And finally, the provision identifies what it accomplishes with respect to such claims, which is to preclude their filing against non-perpetrator defendants more than 20 years after the alleged victim reaches the age of majority.

Of course, we interpret Subsection (d) in context, not in isolation. *Nationstar Mortg. LLC v. Kemp*, 476 Md. 149, 169 (2021). We begin with the context provided by other operative provisions of § 5-117, both of which were created or substantially altered by the 2017 Act:

- First, in subsection (b), the Act modified the sole existing restriction period to provide that child sexual abuse claims could be filed (1) before the alleged victim reaches the age of majority, or (2) "subject to subsections (c) and (d)," within the later of 20 years after the alleged victim reaches the age of majority or three years after the defendant is convicted of certain related crimes.

- Second, in a new subsection (c), the Act imposed heightened requirements to obtain damages against non-perpetrator defendants in claims filed more than seven years after the alleged victim reaches the age of majority, including proof of a duty of care and gross negligence.

In addition to these codified provisions, the parties debate the role of two uncodified

provisions of the 2017 Act:

- First, § 3 provides: "AND BE IT FURTHER ENACTED, That the statute of repose under § 5-117(d) of the Courts Article as enacted by Section 1 of this Act shall be construed to apply both prospectively and retroactively to provide repose to defendants regarding actions that were barred by the application of the period of limitations applicable before October 1, 2017."

- Second, the statement of purpose provides, as relevant here, that the Act was: "FOR the purpose of altering the statute of limitations in certain civil actions relating to child sexual abuse; establishing a statute of repose for certain civil actions relating to child sexual abuse . . . ."[19]

Unlike the codified provisions, these uncodified provisions expressly refer to a "statute of

repose," with § 3 tying that reference directly to Subsection (d).[20]

Our plain language analysis of Subsection (d), considered in relevant context, must

be carried out in relation to our goal, which is to determine whether the General Assembly

---

[19] A bill's statement of purpose, which is "part of the title," is "part of the statutory text" and "describes in constitutionally acceptable detail what the bill does." *Elsberry v. Stanley Martin Cos.*, 482 Md. at 187 (quoting *Legislative Drafting Manual 2015*, Dep't of Legis. Servs., at 37 (2014)). The complete statement of purpose of the 2017 Act is:

> FOR the purpose of altering the statute of limitations in certain civil actions relating to child sexual abuse; establishing a statute of repose for certain civil actions relating to child sexual abuse; providing that, in a certain action filed more than a certain number of years after the victim reaches the age of majority, damages may be awarded against a person or governmental entity that is not an alleged perpetrator only under certain circumstances; providing that a certain action is exempt from certain provisions of the Local Government Tort[] Claims Act; providing that a certain action is exempt from certain provisions of the Maryland Tort[] Claims Act; defining a certain term; making certain stylistic changes; providing for the application of this Act; and generally relating to child sexual abuse.

[20] The parties pay less attention to the bill's short title, which is: "Civil Actions – Child Sexual Abuse – Statute of Limitations and Required Findings."

intended the restriction period established in that subsection to operate as a statute of limitations or a statute of repose. To that effect, our obligation is to not give dispositive effect to any single phrase or feature of the statute, but to consider all its features and "look holistically at the statute and its history to determine whether it is akin to a statute of limitation[s] or a statute of repose." *Anderson*, 427 Md. at 123-24. We therefore return to the four typically distinct features we reviewed in *Anderson*. Although they were not intended to be exhaustive, we find them helpful to apply here.[21]

---

[21] *Anderson* did not purport to set forth factors that must be met for a restriction period to be considered either a statute of repose or a statute of limitations. Instead, it identified common features of each to assist courts in discerning legislative intent.

Notably, both the short title and the statement of purpose in the relevant laws enacting and amending the statute at issue in *Anderson* expressly labeled it a statute of limitations. In *Anderson*, we quoted the statement of purpose from the act that originally added § 5-109 to the Code: "Section 5-109 was added to the Courts Article '*for the purpose of providing the statute of limitations for actions based on malpractice by physicians.*'" *Anderson*, 427 Md. at 106-07 (quoting 1975 Md. Laws, Ch. 545 (emphasis added in *Anderson*)). Chapter 545 also included a short title—"Statute of Limitations – Medical Malpractice"—that referenced only a statute of limitations, not a statute of repose. The version of § 5-109 that this Court interpreted in *Anderson* was enacted through Chapter 592 of the Acts of 1987. *Anderson*, 427 Md. at 111. As with its predecessor, Chapter 592 included a short title—"Medical Malpractice – Statute of Limitations"—as well as a statement of purpose—as relevant here: "generally relating to the statute of limitations in actions for damages against health care providers"—that referenced only a statute of limitations, not a statute of repose. 1987 Md. Laws, Ch. 592.

It does not appear from our opinion in *Anderson* that either party argued that the titles were relevant to the Court's analysis. Nonetheless, if those references in the titles were dispositive as to legislative intent, the remainder of our analysis in *Anderson* focusing on the features of the law would have been unnecessary. Especially given our detailed review of the history and interpretation of § 5-109 in that case, 427 Md. at 106-11, the absence of any discussion on that point is notable.

Purpose. A statute of limitations serves primarily to encourage prompt resolution of claims and avoid elements of unfairness associated with the delayed prosecution of claims, including missing witnesses, faded memories, and the loss of evidence. *Id.* at 118. The purpose of a statute of repose is to create an absolute bar or immunity to a cause of action to benefit a class of potential defendants. *Id.*

The Institutions point to two features of Subsection (d) that they contend demonstrate an intent to create "an absolute bar" to causes of action against a specific "class of potential defendants." First, they argue that the opening words, "[i]n no event," suggest an intent to create an absolute bar. We agree to the limited extent that "[i]n no event" suggests that the provisions of Subsection (d) were to take precedence over any competing provisions that were more permissive. But "[i]n no event" is most naturally read as an expression of the order of precedence of co-existing statutory provisions—i.e., with former subsection (b), which is expressly made "subject to" Subsection (d). That is consistent with both a statute of limitations and a statute of repose. The phrase does not suggest that the limitation in Subsection (d) was intended to be permanent, with effects that could not be altered by a future General Assembly.

Second, the Institutions point out that although subsection (b) applied to all defendants, Subsection (d) applied only to non-perpetrator defendants, which they contend is a specific "class of potential defendants" carved out for special protection. We disagree. The category of non-perpetrator defendants is distinguished only by the role those in it are alleged to have played in the alleged abuse. To be sure, non-perpetrator defendants may

39

be viewed as less culpable than perpetrator defendants.[22]  But the text does not suggest a purpose to carve out for special, permanent protection a class of defendants defined only by the characteristic that everyone in it was culpable for child sexual abuse, just not as culpable as another class of defendants.[23] It seems at least as likely that this was a limitation reflecting the 2017 General Assembly's greater concern about the effects of the passage of time on the ability of alleged non-perpetrator defendants—as opposed to alleged perpetrators, who could at least testify on their own behalf based on personal knowledge— to defend themselves from stale claims.  Another possibility is that the General Assembly was concerned about the ability of perpetrator and non-perpetrator defendants to defend themselves from stale claims, but carved alleged perpetrator defendants out for special *exposure* due to their greater degree of culpability.  Either way, the plain language does not demonstrate an intent to provide a permanent immunity to non-perpetrator defendants.

Operation.  A statute of limitations typically makes a remedy for a cause of action unavailable, while a statute of repose eliminates the cause of action itself.  *See* discussion above at 14-15.  The plain language of Subsection (d) operated like a typical statute of limitations, in that it prohibited *the filing* of a child sexual abuse claim after expiration of the statutory period—"In no event may [a child sexual abuse claim] *be filed . . .*"—without

---

[22] We do not suggest that the General Assembly could not create a statute of repose applicable even to *all* potential defendants in a certain type of claim after a certain period, if its purpose is to provide an immunity for all defendants after that period.

[23] As we will see later, the legislative history also provides no support for this proposition.

purporting to eliminate the cause of action itself. *Cf.* Cts. & Jud. Proc. § 5-108(a) & (b) (emphasis added) (stating, in statutes of repose, that "no cause of action for damages accrues" when the injury occurs after the running of the statutory period).

Trigger. Statutes of limitations are typically triggered by the accrual of the plaintiff's claim, which generally accompanies the plaintiff's injury or discovery of injury. Statutes of repose are typically triggered by something entirely unrelated to accrual, often an act or omission of the defendant or an event relevant to the relationship between the plaintiff and defendant. *See* discussion above at 16-17. In Subsection (d), the trigger was the alleged victim reaching the age of majority. The Institutions contend that trigger is consistent with a statute of repose because it is unrelated to the alleged victim's injury. The Plaintiffs argue that the trigger is consistent with a statute of limitations because it effectively runs from the date of injury, while incorporating Maryland's minority-tolling rule.

On balance, the Plaintiffs have the better of the argument. At first blush, a victim reaching the age of majority seems unrelated to both that victim's injury or discovery of injury and any act or omission of the defendant. However, unlike most other causes of action, child sexual abuse, by definition, can be committed only against a minor. And as all parties acknowledge, a claim for child sexual abuse accrues at the time of the abuse. Accordingly, where tolling is recognized, the date on which a potential plaintiff reaches the age of majority *is* the date when an accrual-based statute of limitations may begin to run. The trigger in Subsection (d) thus functioned as an accrual-based trigger with built-in

41

tolling. Given that minority tolling is an ordinary feature of statutes of limitations but not of statutes of repose, *Anderson*, 427 Md. at 118, we cannot logically conclude that building minority tolling into the trigger means the trigger is unrelated to the alleged victim's injury.

A trigger that is truly unrelated to the alleged victim's injury might, in this context, be the date on which the defendant ceased having any supervisory authority or control over the alleged perpetrator or ceased having any duty of care for the alleged victim.[24] *Cf. CTS Corp. v. Waldburger*, 573 U.S. 1, 7 (2014) (stating that a statute of repose is measured "from the date of the last culpable act or omission of the defendant"). Those triggers are both unrelated to the injury and calculated to provide protection to defendants within a certain period of time after their own involvement with the underlying circumstances ended, akin to the trigger in the statutes of repose in § 5-108(a) and (b).[25] Such triggers also would allow non-perpetrator defendants to more readily know when they would enjoy repose, if that had been the General Assembly's intent.

---

[24] As we discussed in *Anderson*, because the trigger for a statute of repose is ordinarily unrelated to the accrual of a plaintiff's claim, it is typically the case that a statute of repose may bar a cause of action before it even accrues. 427 Md. at 119. That can never be the case for a cause of action where injury, and therefore accrual, is immediate. That potential point of distinction is, therefore, irrelevant here.

[25] It is true, as the Institutions argue, that the date of injury and the date of the defendant's last culpable act must necessarily both have occurred while the alleged victim was a minor. But whereas minority tolling is a typical feature of a statute of limitations, it is not a typical feature of a statute of repose. *Anderson*, 427 Md. at 118.

Tolling. Statutes of limitations are generally subject to tolling, while statutes of repose are not. *See* discussion above at 17-18. As just discussed, Subsection (d) effectively incorporated minority tolling into its trigger period.

In sum, the statutory features we identified in *Anderson* weigh in favor of a conclusion that Subsection (d) was a statute of limitations.

Beyond the Features. The Institutions rely on the statement of purpose and § 3 of the 2017 Act as establishing that Subsection (d) was, in fact, a statute of repose. The former identifies a purpose of the Act as "establishing a statute of repose," and further identifies a separate purpose of "altering the statute of limitations." Even more directly, § 3 refers to "the statute of repose under § 5-117(d)" and states that it shall be construed to "provide repose to defendants regarding actions that were barred by the application of the period of limitations applicable before October 1, 2017." The Institutions argue that those references are clear indications that the General Assembly intended to enact a statute of repose as distinct from a statute of limitations.

We agree that these references strongly support the Institutions' position that the General Assembly intended Subsection (d) to create a statute of repose. But, of course, we do not consider them in isolation, and there are several reasons to question whether that label accurately reflected the General Assembly's intent. Most significantly, as already discussed, the key features of Subsection (d) are more typical of a statute of limitations, suggesting that whatever the 2017 General Assembly thought a "statute of repose" is when

using that phrase in § 3 and the statement of purpose, it is different than a statute bearing

the features—and so possibly also the consequences—we described in *Anderson*.[26]

Moreover, although we ordinarily afford terms in legislative enactments their

common, ordinary meaning, *Comptroller v. FC-GEN Operations Invs. LLC*, 482 Md. 343,

390 (2022), it is not clear that there is a common, ordinary meaning of "statute of repose,"

or even "repose," in this context. For example, neither Merriam-Webster's Collegiate

Dictionary nor the New Oxford American Dictionary, two dictionaries we frequently

consult, define "statute of repose." They do, however, define "statute of limitations."

*Statute of limitations*, Merriam-Webster's Collegiate Dictionary 1220 (11th ed. 2014)

(describing statute of limitations as "a statute assigning a certain time after which rights

cannot be enforced by legal action or offenses cannot be punished"); *Statute of limitations*,

New Oxford American Dictionary 1704 (3d ed. 2010) (defining statute of limitations as "a

---

[26] The Institutions point out that *Anderson*, which clarified the differences between statutes of limitations and statutes of repose, was decided just five years before the 2017 Act was passed, and that this Court generally presumes that the General Assembly acts with full knowledge of this Court's decisions. *See Taylor v. Mandel*, 402 Md. 109, 131 (2007) ("[W]e presume that the Legislature has acted with full knowledge of prior and existing law, legislation and policy[.]"). They are correct. However, it is perhaps not as clear as the Institutions believe that applying that principle would support their view that Subsection (d) is a statute of repose. After all, if the General Assembly were intent on enacting a statute of repose consistent with our discussion in *Anderson*, it would be rather difficult to explain why it enacted Subsection (d) with features we identified in that opinion as more typical of a statute of limitations. Beyond that, principles of statutory construction are useful to the extent they serve their intended purpose of discerning legislative intent. It would not be appropriate to give dispositive effect to a presumption that the General Assembly legislated with full knowledge and awareness of our decision in *Anderson* when the plain language of the statute it enacted stands in such plain contradiction to the label it affixed.

44

statute prescribing a period of limitation for bringing of certain kinds of legal action"). One dictionary in common use defines "statute of repose," but as identical in meaning to a statute of limitations. *Statute of limitations*, Webster's Third New International Dictionary 2230 (2002) ("statute of limitations *or* statute of repose: a statute assigning a certain time after which rights cannot be enforced by legal action").[27]

The Institutions also point to the structure of the 2017 Act, which contains one 20-year limitations period in subsection (b)(2)(i), which all parties agree is a statute of limitations, and a separate 20-year period in Subsection (d). And, the Institutions point out, the limitations period in subsection (b)(2)(i) is expressly identified as being "[s]ubject

---

[27] These common dictionaries all define "repose," but not as used in any way that would distinguish a statute of repose from a statute of limitations. Instead, they define "repose" as, for example, "to lie at rest," "a state of resting after exertion or strain," or "eternal or heavenly rest," or "to place (as confidence or trust) in someone or something." *Repose*, Merriam-Webster's Collegiate Dictionary 1056 (11th ed. 2014); *see also Repose*, New Oxford American Dictionary 1481 (3d ed. 2010) (providing similar definitions); *Repose*, Webster's Third New International Dictionary 1926 (2002) (providing similar definitions). Given the "rest"-related common definition, it is no surprise that this Court has on several occasions referred to the effect and design of a statute of limitations as providing "repose" to defendants. *See Pennwalt Corp. v. Nasios*, 314 Md. 433, 437-38 (1988); *Pierce v. Johns–Manville Sales Corp.*, 296 Md. 656, 665 (1983); *Smith v. Bethlehem Steel Corp.*, 303 Md. 213, 226 (1985); *cf. Anderson v. United States*, 427 Md. 99, 112-17 (2012) (discussing the Court's inconsistent treatment of the term "statute of repose").

Black's Law Dictionary defines "statute of repose" as "[a] statute barring any suit that is brought after a specified time *since the defendant acted* (such as by designing or manufacturing a product), even if this period ends before the plaintiff has suffered a resulting injury." *Statute of Repose*, Black's Law Dictionary 1714 (12th ed. 2024) (emphasis added). However, at least in this instance, we do not view Black's Law Dictionary as reflective of a common, ordinary understanding of the meaning of this esoteric legal term. Moreover, the definition in Black's does not identify a statute of repose as establishing a vested right to be free from future liability.

45

to" Subsection (d). The Institutions argue that if the period in Subsection (d) is a statute of limitations, then it is duplicative of the period in subsection (b)(2)(i) and superfluous. They argue that the better interpretation is that Subsection (d) "would extinguish any claims against non-perpetrators that would otherwise be subject to tolling under" subsection (b).

The Plaintiffs respond that the two provisions are not entirely duplicative under their interpretation. They point out that subsection (b)(2), which applies to both perpetrator and non-perpetrator defendants, allows for a limitations period longer than 20 years after the alleged victim reaches the age of majority if "the defendant is [later] convicted of a [certain] crime relating to the alleged incident or incidents[.]" The Plaintiffs contend that Subsection (d) eliminated the possibility of such an extended period for non-perpetrator defendants.

We do not need to resolve here whether the Plaintiffs' interpretation of the interplay between subsections (b)(2) and (d) is correct. Even if it is, there would be only a narrow set of claims that would have been potentially permitted under subsection (b)(2) but restricted under Subsection (d) and far more straightforward ways of achieving that result.[28] We agree with the Institutions that the apparent total or near total overlap between these two provisions, if both are interpreted to be statutes of limitations, suggests that the General Assembly did not intend for both of them to operate in the same way.[29]

---

[28] For example, the addition of the words "for a perpetrator defendant" at the beginning of subsection (b)(2)(ii) would seemingly have accomplished the same result the Plaintiffs contend was served by Subsection (d).

[29] Justice Biran suggests that our decision today assumes the General Assembly's constitutional role in enacting policy. Dissenting Op. of Biran, J., at 29-30. Of course, it is Justice Biran's position in this case that would lead to the invalidation of a portion of a

In sum, our plain language analysis of the features of Subsection (d) weighs in favor of a determination that the General Assembly intended it to be a statute of limitations but references to Subsection (d) in the statement of purpose and § 3 as a statute of repose and elements of the structure of the statute weigh in the other direction. Because Subsection (d) becomes "ambiguous when read as part of a larger statutory scheme," *Bennett v. Harford County*, 485 Md. 461, 485-86 (2023) (quoting *Wheeling*, 473 Md. at 377), we will consult legislative history for further evidence of the General Assembly's intent.[30]

---

legislative enactment. More importantly, the goal of our principles of statutory construction—and of our application of them today—is "to discern and carry out the intent of the Legislature." *Westminster Mgmt., LLC v. Smith*, 486 Md. 616, 644 (2024). Far from seeking to impose a policy choice on the General Assembly, the sole goal of our analysis of the 2017 Act is to discern and implement the General Assembly's policy choices embodied in that Act.

[30] Both dissents invoke this Court's prior decision in *MTA v. Baltimore County Revenue Authority*, 267 Md. 687 (1973), in contending that we give insufficient weight to the title—specifically the statement of purpose portion of the title—of the 2017 Act. Dissenting Op. of Biran, J., at 10-11; Dissenting Op. of McDonald, J., at 2 & n.3. In *MTA*, we stated that "[i]t is the first rule of statutory construction that the intent of the General Assembly is to be determined from the purpose and language of the enactment." 267 Md. at 695. We further identified the settled proposition "[t]hat the title of an act *is relevant* to ascertainment of its intent and purpose[.]" *Id.* at 695-96 (emphasis added); *see also Central Credit Union v. Comptroller*, 243 Md. 175, 181 (1966) ("The title of an act can be used *in conjunction with the body of the act* to determine the intent, purpose and effect of an amending statute." (emphasis added)). In *MTA*, we interpreted the use of the term "charges" in the body of the enactment in light of the title's reference only to "taxation" and "[t]ax exemption." 267 Md. at 695-96. We thus interpreted the reference to charges to include only "those payments similar in nature to taxes or tax assessments." *Id.* We did so by reading the title and the body of the act together. Here, as discussed, when looking at the 2017 Act in its entirety, we do not see a similar path to resolving ambiguity about legislative intent without resorting to legislative history.

47

### 3.    *Legislative History*

As we have discussed, the difference between a statute of limitations and a statute of repose is not merely semantic.  They have different features, purposes, and consequences.  A statute of repose creates vested rights intended to permanently benefit defendants that cannot later be abrogated by a future General Assembly, while a statute of limitations does not.  To that extent, perhaps the most notable feature of the legislative history of the 2017 Act is the near complete silence concerning the topic, and especially the effect, of a statute of repose.  If it had been the General Assembly's intent to create an irrevocable immunity for the benefit of alleged non-perpetrator defendants who had contributed to instances of child sexual abuse, we would expect there to be some mention of it in the legislative history.  However, except for a single memorandum by an unknown author of uncertain circulation, there is not.

A focus of the parties' briefing is a compromise that was reached after the 2017 bills were first introduced.  As originally introduced, the bills did not include a subsection (d). Instead, they would have created identical 20-years-after-majority limitations periods for alleged perpetrators and alleged non-perpetrators but with alleged perpetrators being potentially subject to a separate limitation period of three years after conviction.  H.B. 642, 437th Gen. Assemb., Reg. Sess. (Md. 2017); S.B. 505, 437th Gen. Assemb., Reg. Sess. (Md. 2017).  The initial drafts also would have precluded the award of damages against any non-perpetrator defendant for all claims—not only those filed more than seven years after the victim reached the age of majority—absent proof of:  (1) actual knowledge of an

incident of sexual abuse that preceded the incident at issue; and (2) negligent failure to prevent the incident at issue. *Id.*

Initially, the Catholic Church neither supported nor opposed the bills. The Church acknowledged that the bills "reflect positive changes" from bills submitted in previous years but continued to have concerns. Some legislators expressed the different concern that the bill set too high a standard for alleged victims to recover damages against non-perpetrator defendants. S. Jud. Proc. Comm. Hearing on S.B. 505, 437th Gen. Assemb., Sess. 1. at 51:30-59:55 (Feb. 14, 2017), *available at* https://perma.cc/W73G-A6J7.

Ultimately, the General Assembly struck a compromise, extending the limitations period to 20 years and applying a heightened standard of proof to obtain damages, but only to claims against non-perpetrator defendants filed more than seven years after the alleged victim reached the age of majority. H. Jud. Comm. Hearing on H.B. 642, 437th Gen. Assemb., Sess. 1. at 35:59-36:27 (Mar. 15, 2017), *available at* https://perma.cc/2SGQ-4H5N. As the bill sponsor explained, that compromise served "to preserve an individual's rights and their voice and allow them to at least be able to face their accuser" by "extend[ing] the time [to] sue them in civil court," while at the same time "rais[ing] the bar" for damages. *Id.* at 36:27-36:39, 39:57-40:02. A representative of the Maryland Catholic Conference testified that the bill represented a "very fair compromise." *Id.* at 37:29-37:45. Referencing the heightened gross negligence standard, she noted that the bill "is a fair way of allowing those people to have their time in court while still being fair to institutions and defendants to be able to defend themselves in a fair way." *Id.* at 37:51-

49

38:05. And she appreciated that "the bill appl[ies] equitably across the board" to public and private entities.[31] *Id.* at 38:05-38:09.

In the same version of the bill in which the General Assembly adopted that compromise, it added Subsection (d) and the references to it as a "statute of repose" in § 3 and the statement of purpose. Yet those changes are not referred to in the statements describing the compromise, in the records of committee hearings, or in seven of the eight sessions when the two chambers considered the legislation, with the only exception being a Senator's recitation of the purpose paragraph on the Senate Floor. Senate Floor Action, Mar. 23, 2017, at 2:16:46-2:17:26, *available at* https://perma.cc/RDG6-ZUXA.

The Institutions claim that the legislative history reflects an intent to enact a statute of repose in three categories of documents: (1) floor reports; (2) fiscal and policy notes; and (3) an unsigned and undated "Discussion" document. However, the floor reports include only the following recitation: "The bill establishes a 'statute of repose' prohibiting a person from filing an action for damages arising out of an alleged incident . . . of [childhood] sexual abuse . . . against a [third party] . . . more than 20 years after the date on which the victim reaches the age of majority." That language, the substance of which would describe a statute of limitations at least as much as a statute of repose, sheds no light beyond the language of the statute. The fiscal and policy note prepared by the Department

---

[31] As noted above, the bill eliminated notice requirements of the Maryland Tort Claims Act and the Local Government Tort Claims Act with respect to child sexual abuse claims, thus removing a significant hurdle to alleged victims suing governmental entities. That change made by the 2017 Act was not reversed by the 2023 Act.

50

of Legislative Services is to the same effect, simply repeating the language from the amendments and floor reports without further discussion.[32]

The final paper on which the Institutions rely is an unsigned, undated, two-page document from the bill file titled "Discussion of certain amendments in SB0505[.]" Alone among everything else in the file, that document reflects an understanding of the distinctions between statutes of limitations and statutes of repose, including some of the distinctions we drew in *Anderson*. The document concludes, among other things, that the "statute of repose" in the 2017 Act would provide vested rights to defendants.

Recognizing the difficulty of reliance on a single, unsigned, undated, unexplained document, and lacking evidence that any legislator ever saw or discussed, much less read, it, the Institutions assert that we can rely on it as a dependable indicator of legislative intent because we have relied on similar documents in the past. The Institutions rely specifically on our opinion in *Warfield v. State*, in which we quoted a "handwritten note, undated and unidentified" in the bill file that identified the purpose of the legislation at issue. 315 Md. 474, 497-98 (1989). The quote from the note in *Warfield*, however, was located in a sparse, 22-page bill file that otherwise contains only official records generated by the General Assembly, the Department of Legislative Services, and the Attorney General.[33] The other

---

[32] It is worth reiterating that the phrase "statute of repose" lacks a common, ordinary meaning. *See* discussion above at 44-45 & n.28. If it had such a meaning, we would consider the bare references to it in the floor reports and fiscal and policy notes to be more meaningful.

[33] The sparse nature of the bill file was not uncommon for the time, which was 1979. The contents of the bill file include information about votes taken by each house, typed

51

materials in the bill file lent credibility to the likely source of the note, which was, in any

event, entirely consistent with those other materials and the Court's plain language

conclusions.[34] Here, by contrast, the bill files for the 2017 Act contain significant materials

originating outside of the General Assembly, and the Institutions would have the document

do much more work on its own than was done by the note in *Warfield*. Standing alone, we

cannot afford much significance to the unattributed "Discussion" document.

Ultimately, what stands out most in the legislative history of the 2017 Act is the

near complete absence of discussion of what a statute of repose is, of a legislative purpose

consistent with such a statute, or of what the effect of enacting such a statute would be.[35]

Given the significance of enacting a true statute of repose, it is an understatement to say

---

and handwritten drafts of the bill, a fiscal note, a bill review letter from the Attorney General, records of committee action, a speakers list for a committee hearing, a copy of the existing statute with words crossed out, and a bill request form. The file does not contain position papers, testimony, or anything else that appears to have originated outside of the General Assembly, the Department of Legislative Services, and the Attorney General.

[34] The other cases the Institutions cite on this point are no more helpful. *Herd v. State* merely quotes from *Warfield*. 125 Md. App. 77, 89-90 (1999). And in *Webber v. State*, the "handwritten note" simply explained the insertion of a word during the legislative process that did not alter the analysis and that followed a detailed discussion of more informative, consistent statements from the bill sponsor and the Maryland Department of Transportation. 320 Md. 238, 245-47 (1990).

[35] The complete absence of any substantive discussion of a statute of repose in the public testimony and hearings concerning the 2017 Act stands in stark contrast to the records regarding protecting prospective defendants in the statutes of repose codified in § 5-108(a) and (b), *see Rose v. Fox Pool Corp.*, 335 Md. 351, 362-70 (1994), and the purpose of the limitations period in § 5-109(a), *see Anderson*, 427 Md. at 125-26.

that if the General Assembly intended to do so and was aware of the consequences of doing so, it is quite odd that the legislative record would contain nearly no discussion of it.[36]

### 4. *Statutory History*

Statutory history also favors the conclusion that Subsection (d) was a statute of limitations. *See Blackstone v. Sharma*, 461 Md. 87, 135 (2018) ("In addition to the legislative history, we will also look at the statute's relationship to earlier and subsequent legislation . . . [which] can assist this Court in narrowing the purpose and scope of the ambiguous statute." (quotation marks omitted)). Just six years after unanimously passing

---

[36] The Institutions also claim support from a statement of the sponsor of the House Bill, Delegate C.T. Wilson, that "as part of this agreement in working with the Church, I've given my word that once this bill becomes law, that I won't come back to the well, I won't petition for anything, I won't try and quote-unquote improve the bill, and I will take it as it is. That's exactly what I plan on doing . . . . I'm just very grateful that the Church . . . did step up." *See* H. Jud. Comm. Hearing on H.B. 642, 437th Gen. Assemb., Sess. 1. at 36:46-37:02 (Mar. 15, 2017), *available at* https://perma.cc/TB3T-RKTP. That statement provides no support for the Institutions' position that Subsection (d) was a statute of repose. First, we do not ordinarily rely on statements of intent by individual legislators, which are not necessarily reliable indicators of the intent of the legislative body as a whole. *See Kelly v. Marylanders for Sports Sanity, Inc.*, 310 Md. 437, 471 n.18 (1987). Second, the statement is in the form of a personal promise not to seek a future expansion of the right to bring such claims, not a reflection of a belief that such an expansion would be beyond the capacity of any future General Assembly. Indeed, a personal promise would have been irrelevant if there was an understanding that the claims were forever precluded.

The Institutions also claim support from the similarity between Subsection (d) and language enacted by the legislatures of Illinois and South Dakota that has been interpreted by their respective high courts to create statutes of repose. *See M.E.H. v. L.H.*, 685 N.E.2d 335, 339 (Ill. 1997) (discussing 735 Ill. Comp. Stat. 5/13-202.2(b) (West 1992); *Bernie v. Blue Cloud Abbey*, 821 N.W.2d 224, 230 n.9 (S.D. 2012) (discussing S.D. Codified Laws § 26-10-25 (West 1991)). We acknowledge the similarity in the language of the provisions, but we have not identified any indication in the 2017 Act or its legislative history that by adopting similar language the General Assembly intended to import the analysis of the Illinois or South Dakota courts interpreting their own statutes.

the 2017 Act, the General Assembly passed the 2023 Act with only six dissenting votes, suggesting that in 2023 they did not believe they had previously provided a permanent, substantive right of non-perpetrator defendants to be immune from suit. *See Blackstone*, 461 Md. at 141 (finding that legislation regarding the mortgage industry after amendments to the Maryland Collection Agency Licensing Act (including the absence of any discussion of the Licensing Act scheme), confirmed that the General Assembly did not intend to license certain mortgage industry actors under that Licensing Act); *see also Bell v. New Jersey*, 462 U.S. 773, 784 (1983) ("Moreover, this interpretation of § 207(a)(1) and § 415 enjoys the support of later Congresses. Of course, the view of a later Congress does not establish definitely the meaning of an earlier enactment, but it does have persuasive value."); *Gozlon-Peretz v. United States*, 498 U.S. 394, 406 (1991) (citing *Bell*'s language and saying that "[w]e believe that Congress' later enactment weighs against petitioner's favored reading of the statute").

### 5. Subsection (d) Was a Statute of Limitations that Did Not Establish a Vested Right to Be Free of Liability

Elements of our analysis point to the conclusion that the General Assembly intended Subsection (d) to be a statute of repose. Most significantly, the General Assembly referred to it as a statute of repose in the statement of purpose and § 3 and differentiated it from another provision that it called a statute of limitations. However, the label the General Assembly chose to affix to the provision is not dispositive because it is inconsistent with the features established by the plain language of the provision, legislative history, and statutory history. Giving primacy to "the General Assembly's purpose and intent when it

54

enacted the statute," *Elsberry v. Stanley Martin Cos.*, 482 Md. 159, 178 (2022), Subsection (d) was a statute of limitations, not a statute of repose. Accordingly, it did not create a vested right to be free from liability, it was subject to alteration by the General Assembly, and the 2023 Act did not retroactively abrogate vested rights in violation of the Maryland Constitution and Declaration of Rights.

### 6. The 2023 Act Is Not Unconstitutional as Applied to the Institutions

The determination that the 2023 Act did not retroactively abrogate vested rights does not fully resolve the issues before us. The Plaintiffs appear to assume that if the 2023 Act did not retroactively abrogate vested rights, it is subject only to rational basis review. We disagree. Article 24 of the Declaration of Rights does not protect only rights that have become vested, nor does it establish a dichotomy where a type of regulation is either wholly beyond the capacity of the General Assembly to alter or subject only to rational basis review. To be sure, we have applied what amounts to rational basis review to the General Assembly's alteration of statutes of limitations as applied to claims that were not yet outside the limitations period at the time of the alteration. *See, e.g.*, *Allen v. Dovell*, 193 Md. 359, 363-64 (1949) (relying on reasonability of time after enactment for plaintiffs to assert existing rights); *Dua*, 370 Md. at 633-35 (discussing similar cases). But that does not mean the same level of scrutiny applies to claims that were already outside the limitations period at the time of the alteration.

As explained most recently in *Pizza di Joey, LLC v. Mayor & City Council of Baltimore*, we have applied different levels of scrutiny to different types of substantive due

55

process challenges. 470 Md. 308, 346 (2020). "When a statute creates a distinction based upon 'clearly suspect' criteria (such as race, gender, religion, or national origin), or when it infringes on a 'fundamental' right, we apply strict scrutiny when considering a substantive due process or equal protection challenge to it." *Id.* Such claims will survive only if they are "necessary to promote a compelling governmental interest." *Id.* (citation omitted). Rational basis review, which is "[o]n the other end of the spectrum," considers only whether a statute is "rationally related to a legitimate governmental interest." *Id.* at 347 (citation omitted).

Between those poles are statutes that implicate interests that do not "merit strict scrutiny but [are] deserving of more protection than a perfunctory review would accord." *Id.* at 347 (citation omitted). In *Pizza di Joey*, we identified two such categories of intermediate review. One is "intermediate scrutiny," which has been applied to "quasi-suspect" classifications, such as sex. *Id.* at 347-48. Under intermediate scrutiny, a statute must "serve important governmental objectives and must be substantially related to the achievement of those objectives." *Id.* The 2023 Act does not create a suspect or quasi-suspect classification, so intermediate scrutiny is not applicable.

The other category of intermediate review is "heightened rational basis" review, which we have applied to certain types of economic regulations, such as those prohibiting an individual from practicing a trade or those discriminating based on a factor unrelated to their stated purpose. *Id.* at 348. Under heightened rational basis review, the statute "must

bear 'a real and substantial relation to the problem addressed by the statute.'" *Id.* (quoting *Att'y Gen. v. Waldron*, 289 Md. 683, 728 (1981)).

Heightened rational basis review is the appropriate level of scrutiny to apply to a statute that retroactively resurrects a remedy that had previously been precluded by a statute of limitations. Although the running of a statute of limitations does not give rise to a vested property right, it does ordinarily preclude plaintiffs from successfully pursuing a defendant in court based on a cause of action and provides "a certain degree of repose" to defendants. *Pierce v. Johns-Manville Sales Corp.*, 296 Md. 656, 665 (1983). And since retroactive changes to statutes of limitations are exceptionally rare, we anticipate that some parties might reasonably base their conduct on an expectation that such a change is unlikely, in a manner that is different in kind and degree from the way parties ordinarily conform their conduct to the current state of the law. Given that, due process demands more than a mere rational basis to justify the retroactive resurrection of an available remedy that had previously been precluded by a statute of limitations.

Heightened rational basis review provides the appropriate level of scrutiny, ensuring that a retroactive legislative change does not upset reasonable expectations created upon the running of a limitations period without sufficient justification, while also not imposing too high a burden on the General Assembly's ability to exercise its police powers when it determines, based on a sufficient factual foundation, that it is necessary and appropriate to do so. *Cf. Waldron*, 289 Md. at 727-28 (striking down statute that prohibited pensioner retired judges from practicing law because it "effectively denie[d] persons the ability to

pursue their chosen vocation"); *Verzi v. Baltimore County*, 333 Md. 411, 427 (1994) (distinguishing an unconstitutional business classification based on geography under rational basis review from other reasonable factors that may survive under "a real and substantial relation" test). Under heightened rational basis review, we do not accept "any reasonably conceivable state of facts that could provide a rational basis" for challenged legislation, *cf. Washington v. State*, 450 Md. 319, 344 (2016) (quoting *FCC v. Beach Commc'ns Inc.*, 508 U.S. 307, 313 (1993)), but rather will consider only "those purposes that are obvious from the text or legislative history of the enactment, those plausibly identified by the litigants, or those provided by some other authoritative source." *Waldron*, 289 Md. at 722. And the legislation will be upheld only if it bears a "real and substantial relation to the problem addressed by the statute[.]" *Id.* at 728.

In a case where the evidence relevant to legislative purpose were in dispute, we would remand to the trial courts to assess whether the 2023 Act satisfied heightened rational basis review. Here, based on the briefing submitted, the undisputed purpose of the 2023 Act, and the undisputed basis for it, we readily conclude that the 2023 Act bears a real and substantial relation to the problem it addressed. That problem, as presented to the General Assembly, was that numerous child sexual abuse claims, more prevalent than previously understood, were never pursued during the then-applicable limitations period through no fault of the victims and too often based at least in part on efforts of both perpetrator and non-perpetrator defendants to hide the misconduct. Further, the General Assembly was presented with a growing body of evidence that many individuals do not

disclose abuse until well into adulthood but still suffer life-long emotional, psychological, and physical health issues resulting from the abuse. In other words, the existing statute of limitations did not reflect the reality of the time in which a reasonably diligent victim of child sexual abuse should be expected to pursue a claim. *Cf. Pennwalt Corp. v. Nasios*, 314 Md. 433, 444 (1988) ("The adoption of statutes of limitation reflects a policy decision regarding what constitutes an adequate period of time for a person of reasonable diligence to pursue a claim." (quoting *Pierce*, 296 Md. at 665)).

Included among evidence of the extent of prior child sexual abuse presented to the 2023 General Assembly was the testimony of several victims who testified that they made contemporaneous childhood reports of abuse but were ignored. Several organizations also submitted testimony in support of the legislation. The State Council on Child Abuse and Neglect submitted testimony that "a child may attempt disclosure to an adult who is distracted, disbelieving, or in denial, and no further action is taken." SCCAN, Testimony in Support of SB 686, at 2 (Mar. 24, 2023). Similarly, the Maryland Coalition Against Sexual Assault submitted testimony that "Children molested and sexually exploited are especially unlikely to be able to promptly file suit. Perpetrators use many tactics to prevent their victims from disclosing abuse. These range from threats against the victim or loved ones, manipulating the victim, convincing the victim nothing is wrong, and exploiting the victim's desire to keep a family together. Some victims remain financially and emotionally depend[e]nt on the perpetrator well into their early adulthood. Others face pressure from

other family members to remain silent, or have a deep sense of shame."[37]  MCASA, Testimony Supporting Senate Bill 686 (Mar. 28, 2023).

The General Assembly also received testimony regarding delayed reporting and the life-long effects of childhood sexual abuse.  The State Council on Child Abuse and Neglect submitted testimony that "[e]xtensive research" established "profound, long-lasting, and sometimes lifetime-long negative effects on children" with costs borne by both the individual survivors and their families, as well as the State.  Another organization, CHILD

---

[37] Before this Court, plaintiffs and amici cite to additional sources that make similar points. A report from the Attorney General of Maryland (first made public in redacted form on April 5, 2023) documented what it described as "pervasive and persistent" acts of sexual and physical abuse in the Archdiocese of Baltimore, along with a "history of repeated dismissal or cover up" of abuse.  Attorney General of Maryland, Report on Child Sexual Abuse in the Archdiocese of Baltimore 1 (Apr. 2023), https://perma.cc/X4DF-6WLP.  The report found that more than 600 children had been abused by at least 156 clergy members since the 1940s. *Id.* at 9.  And The Key School, one of the defendant Institutions, engaged a law firm to investigate and report on allegations of sexual abuse at that school.  The report, which is dated January 2019, concluded that at least 12 former students were sexually abused or groomed at the school between the 1970s and 1990s. *See also* Off. of the Ill. Att'y Gen., Rep. on Catholic Clergy Sex Abuse in Illinois (2023), https://perma.cc/59M3-U6G5 (documenting cover-up of sexual abuse of children in Illinois); Pa. Att'y Gen., 40th Statewide Investigating Grand Jury Report 1 (May 2023), https://perma.cc/3PD4-48LK (same in Pennsylvania); *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 691-93 (6th Cir. 2022) (concerning cover up of abuse of victims by Ohio State University athletic doctor); Off. of the Inspector Gen., U.S. Dep't of Justice, Investigation and Review of the Federal Bureau of Investigation's Handling of Allegations of Sexual Abuse by Former USA Gymnastics Physician Lawrence Gerard Nassar (July 2021), https://perma.cc/6LCK-744E; Freeh Sporkin & Sullivan, LLP, Report of the Special Investigative Counsel Re: the Actions of The Penn. State Univ. Related to the Child Sexual Abuse Committed by Gerald A. Sandusky (July 12, 2012), https://perma.cc/4E7G-BKHH. Amici Human Rights for Kids also cites to a panoply of articles and research regarding the prevalence and effects of sexual abuse experienced by children in the criminal justice system.

USA, testified that in a study of survivors of childhood sexual abuse in the Boy Scouts of America, 51% of survivors first disclosed the abuse at age 50 or older. CHILD USA, Testimony in Support of SB686 (Mar. 24, 2023). Doctors Elizabeth Letourneau and Rebecca Fix of the Johns Hopkins Bloomberg School of Public Health testified that their research "shows that most survivors of child sexual abuse delay disclosing their abuse until years and even decades after it occurred" and that abuse increases risk for future health problems. Testimony of Elizabeth Letourneau and Rebecca Fix in Support of SB 686.[38]

---

[38] Before this Court, plaintiffs and amici cite to additional sources reaching the same conclusion. The Attorney General's Report concluded that "over half of victims of child sexual abuse do not report it until they are over the age of 50," and noted that many victims "suffer[] lifelong effects from" their abuse, including "vulnerability to substance abuse, challenges in emotionally connecting to spouses or other people close to them, depression, anxiety, anger, eating disorders and even chronic physical pain." Attorney General's Report at 19-20. *See also, e.g.*, Brief of Psychology and Psychiatry Scholars as Amici Curiae, *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686 (6th Cir. 2022) (No. 21-3981), 2022 WL 500955, at *10-17 (discussing reasons for delays in reporting abuse, especially when it occurs within trusted institutions); Delphine Collin-Vézina et al., *A Preliminary Mapping of Individual, Relational, and Social Factors that Impede Disclosure of Childhood Sexual Abuse*, 43 Child Abuse & Neglect 123, 124 (2015) (noting that 70-75% of survivors of child sexual abuse do not report within five years of the abuse); Patrick J. O'Leary & James Barber, *Gender Differences in Silencing Following Childhood Sexual Abuse*, 17 J. Child Sexual Abuse 133, 138 (2008) (finding that 44.9% of male and 25.4% of female child sex abuse victims first disclosed their abuse more than twenty years after it occurred); David Viens, *Countdown to Injustice: The Irrational Application of Criminal Statutes of Limitations to Sexual Offenses Against Children*, 38 Suffolk U.L. Rev. 169, 169-70 (2004) (highlighting the "injustice" of imposing limitations on sexual abuse that affects "[e]very aspect of [a victim's] emotional, mental, spiritual and physical well-being"); Josephine Bulkley, *Introduction: Background and Overview of Child Sexual Abuse Law Reforms in the Mid-1980's*, 40 U. Miami L. Rev. 5, 6 (1985) (surveying child sex abuse reforms that began in the 1980s).

The General Assembly also heard first-hand accounts from several victims who testified that children often lack the emotional and cognitive skills to come forward in the moment. Confirming reports from medical and psychological experts, victims also testified about their personal struggles in adulthood with trauma, depression, and substance abuse stemming from their childhood sexual abuse.

Based on the evidence before the General Assembly concerning the historical prevalence of child sexual abuse, prior cover-ups, and significantly delayed reporting by victims well beyond the 20-year window provided by Subsection (d), the elimination of the statute of limitations in the 2023 Act bore a real and substantial relation to the problem being addressed. To be sure, the General Assembly could have more closely tailored its solution, such as by maintaining heightened proof requirements or lower damages caps applicable to older claims. It also could have opened a window for pursuing claims, as some other states have done.[39] But heightened rational basis review does not require that the chosen legislative solution be the most narrowly tailored. Absent a constitutional limitation, it is the prerogative of the political branches, not the Judiciary, to make those policy choices.

---

[39] *See, e.g.*, Del. Code Ann. tit. 10, § 8145 (West 2009) (providing a two-year period following July 9, 2007, to bring suits that were previously barred by the former statute of limitations); N.J. Stat. Ann. § 2A:14-2b (West 2019) (providing similar two-year period); N.Y. C.P.L.R. § 214-g (McKinney 2020) (providing similar two-and-a-half-year period).

**CONCLUSION**

In sum, former § 5-117(d), as enacted by the 2017 Act, was an ordinary statute of limitations, not a statute of repose. As an ordinary statute of limitations, the expiration of the statutory period in Subsection (d) did not give rise to a vested right to be free of liability. Accordingly, the Child Victims Act of 2023, which retroactively eliminated the statute of limitations in Subsection (d), did not retroactively abrogate vested rights in violation of the Constitution of Maryland and the Maryland Declaration of Rights. Furthermore, the retroactive resurrection of remedies in the Child Victims Act of 2023 survives heightened rational basis scrutiny. The Plaintiffs' as-applied challenges to the constitutionality of the Child Victims Act of 2023 therefore fail.

Accordingly: (1) in Nos. 9 and 10, the judgments of the respective circuit courts are affirmed and the cases will be remanded for further proceedings consistent with this opinion; and (2) in Misc. No. 2, the certified question presented by the United States District Court for the District of Maryland, as reformulated by this Court, is: "Does the Maryland Child Victims Act of 2023, 2023 Md. Laws ch. 5 (S.B. 686) (codified at Md. Code Ann., Cts. & Jud. Proc. § 5-117), constitute an impermissible abrogation of a vested right in violation of Article 24 of the Maryland Declaration of Rights and/or Article III, Section 40 of the Maryland Constitution?" Our answer is no.

**IN MISC. NO. 2, THE CERTIFIED QUESTION OF LAW IS ANSWERED AS SET FORTH ABOVE; COSTS TO BE**

63

**DIVIDED EQUALLY BETWEEN APPELLANTS AND APPELLEE.**

**IN NO. 9, JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

**IN NO. 10, JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

Circuit Court for Prince George's County
Case No. C-16-CV-23-004497

Circuit Court for Harford County
Case No. C-12-CV-23-000767

United States District Court for the District of Maryland
Case No. 1:23-cv-02662-MJM

Argued: September 10, 2024

IN THE SUPREME COURT

OF MARYLAND

Nos. 9 & 10; Misc. No. 2
September Term, 2024

---

ROMAN CATHOLIC ARCHBISHOP
OF WASHINGTON
v.
JOHN DOE, ET AL.

---

BOARD OF EDUCATION OF
HARFORD COUNTY, ET AL.
v.
JOHN DOE

---

THE KEY SCHOOL, INC., ET AL.
v.
VALERIE BUNKER

---

Fader, C.J.
Watts
Booth
Biran
Eaves
Killough
McDonald, Robert N.
  (Senior Justice, Specially Assigned),

JJ.

---

Dissenting Opinion by Biran, J.,
which Eaves and McDonald, JJ., join.

---

Filed:  February 3, 2025

We live in a society with a disgraceful history of child sexual abuse committed by people in positions of trust: teachers, clergy, and others. Too often, the people in charge of the institutions that employed these predators turned a blind eye to the abuse or actively concealed it. As the extent of the problem has become increasingly clear, our General Assembly and other legislatures around the country have updated criminal and civil laws to provide greater opportunities for the victims of child sexual abuse to receive justice. Maryland's General Assembly concluded in 2023 that a combination of factors justified eliminating the then-existing time periods applicable to the filing of civil claims for child sexual abuse. The General Assembly undoubtedly had the power to do that *prospectively* – *i.e.*, with respect to all claims for which the applicable time period had not yet run. The question we must decide here is whether, consistent with the Maryland Constitution, the General Assembly in 2023 had the power to revive claims against non-perpetrator defendants that could no longer be brought based on legislation the General Assembly had passed in 2017 (the "2017 Act"). As the Majority explains, the answer to that question turns on whether a new time period added in the 2017 Act – § 5-117(d) ("Subsection (d)") of the Courts and Judicial Proceedings Article ("CJP") – was a statute of limitations or a statute of repose.

In concluding that Subsection (d) was a statute of limitations rather than a statute of repose, the Majority opinion fails to interpret the 2017 Act as the General Assembly wrote it. It is difficult to imagine how the General Assembly could more plainly state that Subsection (d) was a statute of repose. The purpose paragraph of the bill states that the bill establishes a "statute of repose" – words also used in Section 3 of that bill with specific

reference to Subsection (d). Nothing in Subsection (d) itself is inconsistent with the General Assembly's declared purpose to create a statute of repose with respect to claims against non-perpetrator defendants. And another section of the 2017 Act – Subsection (b) – contains a statute of limitations that renders Subsection (d) superfluous if Subsection (d) is also a statute of limitations. In addition, the 2023 General Assembly understood that it was repealing a "statute of repose" when it repealed Subsection (d) in the Child Victims Act of 2023, 2023 Md. Laws, Ch. 6 (the "2023 Act"). It explicitly said so in the purpose paragraph of that bill.

The Majority opinion's analysis is based on the remarkable premise that the General Assembly did not know what it meant when it used the phrase "statute of repose" in the 2017 Act. A general principle of statutory construction under this Court's precedents is that the General Assembly knows what it is saying when it uses specific language. This is a particularly apt presumption with respect to the use of the phrase "statute of repose" in the 2017 Act, which was enacted only five years after this Court made clear in *Anderson v. United States*, 427 Md. 99 (2012), what a "statute of repose" is, and explained that a "statute of repose" has very different consequences from a "statute of limitations." The Majority opinion also casts aside the House and Senate Floor Reports, Fiscal and Policy Note, and other indicia of legislative intent that all specify the General Assembly added Subsection (d) to "establish[] a statute of repose."

The decision to establish a statute of repose was, without question, a significant policy choice. As the Majority opinion correctly explains, a statute of repose confers a right not to be sued that vests once the repose period expires. That vested right cannot be

2

retroactively abrogated without violating the Maryland Constitution. Given the consequences of creating a statute of repose, the Majority opinion says it expected to see more detailed discussion of those consequences in the legislative history.

But our task is not to sift through legislative history to determine whether the General Assembly articulated the precise policy rationale or ramifications of its decisions. Rather, we respect the political process and determine legislative intent primarily through statutory text.

The Majority opinion charts a different course with undesirable results. It calls into question past judicial statements about the primacy of the plain language of legislation and the importance of a bill's title, particularly its purpose paragraph. It also suggests that a legal term that does not appear in non-legal dictionaries might not be given effect unless the General Assembly says enough in the legislative history to satisfy a reviewing court that it knows what the term means. And it uses the decision to repeal a law as evidence that the predecessor Legislature which enacted the repealed law did not understand its plain language, rather than as evidence that the successor Legislature opted to substitute one conscious policy choice for another. In all of these ways, the Majority opinion is a departure from our principles of statutory interpretation from which I respectfully dissent.[1]

---

[1] I agree with the Majority that the Board of Education of Harford Country has the ability to raise its arguments in case No. 10, and that the running of an ordinary statute of limitations does not create a vested right to be free of liability. *See* Maj. Op. at 9, 28. Because I conclude that Subsection (d) is not a statute of limitations, I will not opine on the Majority's determination that heightened rational basis review is the appropriate level of scrutiny to apply to a statute that retroactively resurrects a remedy that had previously been precluded by an ordinary statute of limitations. *See* Maj. Op. at 55-62. Consistent with

**Principles of Statutory Interpretation**

This Court has stated its core principles of statutory interpretation many times. To summarize, always "the goal is to discern and implement the intent of the Legislature." *In re O.P.*, 470 Md. 225, 255 (2020). "That quest starts with the text of the particular provision within the context of the statutory scheme of which it is part. Review of the legislative history of the provision may help confirm conclusions drawn from the text or resolve its ambiguities. Prior case law concerning the provision or similar statutes, both in Maryland and other jurisdictions, may provide helpful guidance. Finally, consideration of the consequences of alternative interpretations of the statute grounds the analysis." *Id.*

**A. Statutory Text**

The Majority opinion distinguishes between the codified portions of the 2017 Act – what the opinion calls the "operative provisions" of the session law – and the uncodified portions of the law. *See* Maj. Op. at 34. This leads the Majority to downplay the significance of the uncodified portions of the 2017 Act. However, the uncodified portions, including the 2017 Act's purpose paragraph, are equally "part of the statutory text" for our statutory interpretation analysis. *See Elsberry v. Stanley Martin Cos., LLC*, 482 Md. 159, 187 (2022). When one reads the 2017 Act in its entirety, one begins with the title, including the purpose paragraph, and then moves on to the other portions of the bill. I will go through the plain language of the 2017 Act in that sequence. Then, I will discuss the Majority's interpretation of the statutory text.

---

the Majority opinion, I will refer to the institutional defendants in all three cases collectively as the "Institutions."

1. <u>The Plain Language of the 2017 Act</u>

*The Title of the 2017 Act, Including the Purpose Paragraph*

In the purpose paragraph of the 2017 Act, the General Assembly's stated intent, as pertinent here, was to (1) "alter[ ] the statute of limitations in certain civil actions relating to child sexual abuse" and (2) "establish[] a statute of repose for certain civil actions relating to child sexual abuse[.]" 2017 Md. Laws 3895 (ch. 656).

*Section 1 of the 2017 Act: the Amendments to CJP § 5-117*

Section 1 of the 2017 Act was the part of the bill in which the General Assembly amended CJP § 5-117.

Before the 2017 Act, Subsection (b) of CJP § 5-117 contained a statute of limitations that required an action for damages arising out of alleged child sexual abuse to "be filed within 7 years of the date that the victim attains the age of majority." CJP § 5-117(b) (2016 Supp.). In the 2017 Act, the General Assembly amended this statute of limitations to require an action for damages arising out of child sexual abuse to be filed

(1) at any time before the victim reaches the age of majority; or
(2) subject to subsections (c) and (d) of this section, within the later of:
    (i)   20 years after the date that the victim reaches the age of majority; or
    (ii)  3 years after the date that the defendant is convicted of a crime relating to the alleged incident or incidents under:
        1. § 3-602 of the Criminal Law Article; or
        2. The laws of another state or the United States that would be a crime under § 3-602 of the Criminal Law Article.

2017 Md. Laws 3896-97 (ch. 656). This was what the purpose paragraph of the 2017 Act referred to as "altering the statute of limitations in certain civil actions relating to child sexual abuse[.]"

5

In a new Subsection (c), the General Assembly provided that, with respect to an action brought "under this section more than 7 years after the victim reaches the age of majority," damages may be awarded against a non-perpetrator defendant only if that defendant: (1) owed a duty of care to the victim; (2) employed the alleged perpetrator or exercised some degree of responsibility or control over the alleged perpetrator; and (3) is found to have acted with gross negligence. *Id.* at 3897-98.

In a new Subsection (d), the General Assembly created a time period that applied only to non-perpetrator defendants:

> In no event may an action for damages arising out of an alleged incident or incidents of sexual abuse that occurred while the victim was a minor be filed against a person or governmental entity that is not the alleged perpetrator more than 20 years after the date on which the victim reaches the age of majority.

*Id.* at 3898. This was what the purpose paragraph of the 2017 Act referred to as "establishing a statute of repose for certain civil actions relating to child sexual abuse."[2]

### Section 2 of the 2017 Act: Uncodified Language Concerning Non-Retroactive Application of Longer Period of Limitations

In Section 2 of the 2017 Act – like the purpose paragraph, an uncodified portion of the bill – the General Assembly provided: "That this Act may not be construed to apply retroactively to revive any action that was barred by the application of the period of limitations applicable before October 1, 2017." *See* 2017 Md. Laws 3899. In other words, where a victim had reached the age of 25 (seven years after the age of majority) without

---

[2] In Section 1 of the 2017 Act, the General Assembly also amended certain provisions of CJP § 5-304 and § 12-106 of the State Government Article. *See* 2017 Md. Laws 3898-99 (ch. 656). Those amendments are not at issue here.

filing suit before the effective date of the 2017 Act, that person's claim would not be timely filed under the new law, even if they were under the age of 38.[3]

*Section 3 of the 2017 Act: Uncodified Language Concerning the New "Statute of Repose"*

In Section 3 of the 2017 Act, the General Assembly addressed the new "statute of repose" that it referred to in the purpose paragraph and placed in new Subsection (d) of CJP § 5-117:

> That the statute of repose under § 5-117(d) of the Courts Article as enacted by Section 1 of this Act shall be construed to apply both prospectively and retroactively to provide repose to defendants regarding actions that were barred by the application of the period of limitations applicable before October 1, 2017.

2017 Laws 3899 (ch. 656).[4]

Thus, where a victim had reached the age of 25 (seven years after the age of majority) without filing suit against a non-perpetrator defendant *before* the effective date of the 2017 Act, Subsection (d) "provide[d] repose" to that non-perpetrator defendant. In other words, that claim could not be revived "retroactively." And if, *after* the effective date of the 2017 Act, *i.e.*, "prospectively," a victim who was not yet 25 as of October 1, 2017, reached the age of 38 without filing suit against a non-perpetrator defendant, Section 3

---

[3] That would be the case whether the defendant was the perpetrator or a non-perpetrator of the act of abuse.

[4] The 2017 Act also included Section 4, which stated the October 1, 2017 effective date of the law.

directed that Subsection (d) would also "provide repose" to that non-perpetrator defendant.[5]

    2.  <u>The Majority Opinion's Interpretation of the 2017 Act</u>

*The Majority Opinion Downplays the Significance*
*of the Purpose Paragraph.*

Article III, § 29 of the Maryland Constitution states that "every Law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title[.]" The title of a bill consists of three components: a "short title," a purpose paragraph, and a function paragraph. *See Legislative Drafting Manual 2025*, Dep't of Legis. Servs., at 51 (Sept. 2024), available at https://perma.cc/85RR-4S6Y. Maryland "has one of the strictest title requirements of the 50 states[.]"[6] *Id*.[7]

Legislative drafters, and the Assistant Attorneys General who assess the legal sufficiency of a bill, thus pay close attention to the bill's title, particularly the purpose

---

[5] That is, unless a future General Assembly were to repeal the statute of repose before such a victim reached the age of 38. As stated above, the General Assembly may repeal a statute of repose *prospectively* without violating any vested right of a defendant to be immune from suit.

[6] The constitutions of most of the states have a "single subject" requirement for legislative bills and direct that the subject be described in the title to the bill. 1A Sutherland Statutory Construction §§ 17:1, 18:1. The federal constitution does not have such a requirement. *Id*.

[7] For convenience, my references are to the current 2025 version of the Legislative Drafting Manual. However, there is nothing new in this version of the Manual concerning its discussion of bill titles and Article III, § 29 of the State Constitution. To review the copy of the Manual that was in effect at the time of the 2017 Act, *see Legislative Drafting Manual 2017*, Dep't of Legis. Servs. (Sept. 2016), available at https://perma.cc/53EV-DAEK. The section concerning the Title of a Bill begins on page 37 in the 2017 edition of the Legislative Drafting Manual.

paragraph, because the purpose paragraph "is the part of the title that describes in constitutionally acceptable detail what the bill does." *Elsberry*, 482 Md. at 187 (quoting *Legislative Drafting Manual 2015*, Dep't of Legis. Servs., at 37 (2014)). Accordingly, this Court normally relies on the purpose paragraph of the title to construe legislation, *see, e.g., id.,* and we have stated that the "the bill title and purpose *are* part of the statutory text – *not* the legislative history – even if both are used in service of ascertaining the intent of the General Assembly." *Id*. (emphasis in original); *see also Williams v. Morgan State Univ*., 484 Md. 534, 557 n.13 (2023); *Syed v. Lee*, 488 Md. 537, 677 (2024) (Booth, J., dissenting).

The Majority opinion characterizes the statement that the bill establishes a "statute of repose" as a mere "label." *See, e.g.*, Maj. Op. at 43. But, as noted above, this is not just language from documents in the legislative history or commentary on the bill. These are the General Assembly's own words in the bill itself. The Majority opinion thus fails to fully appreciate that the purpose paragraph is itself part of the legislation we are interpreting, *see, e.g.*, *Wash. Suburban Sanitary Comm'n v. Pride Homes, Inc.*, 291 Md. 537, 543 n.4 (1981) ("The enactments contained in the various volumes of the session laws are the law."), and performs important functions to ensure the legal and constitutional

9

sufficiency of the legislation.[8,9] The purpose paragraph could not be more clear: with the 2017 Act, the General Assembly intended to establish a statute of repose. *See MTA v. Baltimore Cnty. Revenue Auth.*, 267 Md. 687, 695-96 (1973) (in determining the meaning of "charges" and "fees" in the relevant statute, disclaiming reliance on the parties' proffered "dictionary and case law definitions" and instead looking to the title of the bill,

---

[8] The Majority opinion's dismissal of the purpose paragraph of the 2017 Act as an unreliable "label" seems to suggest that the bill was unconstitutional under Article III, § 29 from the beginning. However, this Court has long avoided construing bills in a way that would make them unconstitutional. *See, e.g., Elsberry*, 482 Md. at 194. In any event, the Court has said that "[t]he title [of a bill] … should only be used to resolve an ambiguity, *never to create one.*" *Tidewater/Havre de Grace, Inc. v. Mayor and City Council of Havre de Grace*, 337 Md. 338, 347 n.7 (1995) (emphasis added). The Majority opinion violates this directive. *See* Maj. Op. at 47.

[9] The Majority opinion also overlooks the principle that "when a legislature uses different words, especially in the same section or in a part of the statute that deals with the same subject, it usually intends different things." *Lawrence v. State*, 475 Md. 384, 406 (2021) (citations omitted). Here, the verbs in the purpose paragraph's descriptive clauses – "altering" and "establishing" – have different meanings. To "alter" means "to make different without changing into something else," whereas to "establish" here means "to bring into existence." *See Alter*, Merriam-Webster Dictionary, available at https://perma.cc/3A6F-RKFN; *Establish*, Merriam-Webster Dictionary, available at https://perma.cc/SGE3-7U7U. Those word choices make sense. Before 2017, the limitations period in CJP § 5-117(b) was "within 7 years of the date that the victim attains the age of majority." The General Assembly then changed that limitations period to the later of 20 years after the victim reaches the age of majority or three years after the date the defendant is convicted of a qualifying crime. In contrast, there was no statute of repose before 2017. It follows, therefore, that the General Assembly needed to create one if it wished to include a statute of repose in § 5-117. Moreover, as discussed below, the General Assembly is aware of the distinction between a statute of limitations and a statute of repose. By using distinct verbs to describe two different actions the General Assembly was taking in revising CJP § 5-117, the purpose paragraph of the 2017 Act made clear that the General Assembly, at a minimum, understood that statutes of limitations and statutes of repose are, themselves, distinct.

including the purpose paragraph, which "plainly expressed" the General Assembly's purpose in enacting the bill).

The cases upon which the Majority opinion relies in downplaying the importance of the purpose paragraph (and other uncodified provisions of the 2017 Act), *see* Maj. Op. at 35-36, are distinguishable or inapposite. In *Martin v. Howard County*, 349 Md. 469 (1998), this Court interpreted § 14-120 of the Real Property Article ("RP"), which was enacted "[f]or the purpose of permitting certain persons to bring an action to abate a nuisance when certain property is being used for certain controlled dangerous substance offenses." *Id.* at 472 (quoting purpose paragraph of the session law) (alteration by the Court). Nothing in *Martin* suggests that the Court found the purpose paragraph of the legislation that created RP § 14-120 to be of less significance than the codified provisions. Rather, the Court observed that the dictionary definition of "abate" – which was the verb used in the purpose paragraph – was broad enough to encompass both legal and equitable relief. *See id.* at 488-89. It was only after making that observation that the Court discussed two codified provisions of the law, both of which provided mechanisms to "abate" nuisances, but which had different implications with respect to the right to a jury trial. *See id.* at 489 (contrasting RP § 14-120(e), which provides for an action that is equitable in nature, with RP § 14-120(f)(1), which is legal in nature).

Here, the purpose paragraph of the 2017 Act contains two legal terms of art: "statute of repose" and "statute of limitations." "Statute of repose," unlike "abate" in RP § 14-120, only describes one codified provision of the 2017 Act, *i.e.*, Subsection (d). And "statute of limitations" corresponds to another specific codified provision, *i.e.*, Subsection (b).

11

*State v. Jone*s, 340 Md. 235 (1995), concerned labeling-type language not in statutory text, but rather in legislative history. *See id.* at 261-62. And the Supreme Court cases cited in *Jones*, *see id.* at 261-62 & n.6 (referring to *Dep't of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767 (1994), and *United States v. Halper*, 490 U.S. 435 (1989)), did not involve the interplay between codified and uncodified portions of legislation.

Finally, in *CTS Corp. v. Waldburger*, the United States Supreme Court held that the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9658, did not preempt state statutes of repose. 573 U.S. 1, 18 (2014). The preemption provision in question only referred to a "statute of limitations." *Id.* at 13. The Supreme Court explained that Congress in the past had used the term "statute of limitations" broadly enough to include a "statute of repose." *Id.* Thus, the Court could not simply rely on the absence of the phrase "statute of repose" from CERCLA's preemption provision as manifesting the intent to exclude state statutes of repose from preemption. *See id.* Thus, the Court delved further into the statutory language and legislative history to determine whether, at the time CERCLA was enacted, the distinction between a statute of limitations and a statute of repose was well enough understood to support the inference that CERCLA's reference only to the former indicated an intent to exclude the latter from preemption. *See id.* at 13-16.

Not only does *Waldburger* have nothing to do with uncodified provisions of a law; it also highlights the weakness of the Majority opinion's position here. Unlike CERCLA's preemption provision, the purpose paragraph of the 2017 Act (as well as other provisions of the 2017 Act) explicitly referred both to a "statute of repose" and a "statute of

12

limitations." This language demonstrates that the General Assembly understood these terms to have distinct meanings.

### *The Majority Opinion Also Downplays the Significance of Section 3 of the 2017 Act.*

Another part of the 2017 Act that the Majority opinion downplays is Section 3. Like the purpose paragraph, Section 3 was an uncodified provision but nevertheless part of the text of the 2017 Act. Section 3 provided that "the *statute of repose* under § 5-117(d) of the Courts Article as enacted by Section 1 of this Act shall be *construed to apply both prospectively and retroactively* to *provide repose* to defendants regarding actions that were barred by the application of the period of limitations applicable before October 1, 2017." 2017 Md. Laws 3899 (ch. 656) (emphasis added).

Three things about Section 3 stand out. First, it refers to a "statute of repose" – another express reference to this type of time period. This reference confirms that the mention of a "statute of repose" in the purpose paragraph is not – as the Majority opinion believes – an inaccurate "label," but rather that one of the purposes of the law, in fact, is to enact a "statute of repose" in Subsection (d).

Second, Section 3 says that Subsection (d) must be construed to "provide repose" to the defendants to whom Subsection (d) applies. This shows that, in enacting Subsection (d), the General Assembly was not concerned about denying a remedy to plaintiffs after a certain period of time (which it already had covered in Subsection (b)(2) and addressed in Section 2 of the session law), but rather was providing "repose" to certain defendants.

13

Third, Section 3 directed courts to apply Subsection (d) both prospectively *and retroactively with respect to actions that were barred by the period of limitations applicable before the effective date of the 2017 Act.* This shows that the General Assembly decided to provide certain defendants with something that they did not have, despite the prior applicable limitations period having already run: "repose." This demonstrates yet again that the General Assembly understood that a statute of repose is not the same as a statute of limitations, and that the former provides more to a defendant than does the latter.

*The Majority Opinion Fails to Recognize That the General Assembly May Enact a "Statute of Repose" Having the Particular Features It Believes Are Appropriate.*

After analyzing Subsection (d), the Majority opinion concludes that, based on our description in *Anderson* of the typical features of statutes of repose and statutes of limitation, "the key features of Subsection (d) are more typical of a statute of limitations[.]" Maj. Op. at 43. As discussed below, I disagree with the Majority opinion's analysis of Subsection (d)'s language. As I see it, the language of Subsection (d) reflects an intent to create a statute of repose, and *Anderson* does not compel a different conclusion.

However, there is a more fundamental problem with the Majority opinion: It fails to recognize that the General Assembly may create a "statute of repose" with any set of features it deems appropriate. The General Assembly's authority to enact a statute of repose containing any particular set of features is not constrained by anything we said in *Anderson*.[10] If the General Assembly wants to enact a statute of repose that uses as its trigger an event that is related wholly to the victim's injury, it may do so. If it wants to

---

[10] I discuss *Anderson* at length below.

enact a statute of repose that applies to claims against all potential defendants and not just a subset of defendants, it may do so.[11] The Majority opinion thus goes astray in the first instance by failing to account for the possibility that the General Assembly may have intended in the 2017 Act to adopt a statute of repose containing the particular features set forth in Subsection (d). Indeed, given the express statement in the purpose paragraph and Section 3 of the 2017 Act that the General Assembly was creating a "statute of repose," the Majority should start with a presumption that the General Assembly did not mislabel Subsection (d) as a statute of repose, but rather intended to establish a statute of repose with the set of features specified in Subsection (d).[12]

*Under the Majority Opinion's Reading of Subsection (d), It Is Superfluous.*

One of our fundamental canons of statutory interpretation is that "[w]e will not interpret a statute in a manner so as to render a 'word, clause, sentence, or phrase ...

---

[11] The Majority opinion recognizes this possibility and acknowledges that, in theory, the General Assembly may create a statute of repose that contains none of the features typically associated with a statute of repose. *See* Maj. Op. at 35 n.18 & 40 n.22. This makes the Majority's refusal to give effect to the General Assembly's multiple statements in the text of the 2017 Act that it is creating a statute of repose with respect to a subset of defendants all the more perplexing.

[12] The Majority opinion claims that I "treat[] the General Assembly's use of the term 'statute of repose' to describe Subsection (d) in the 2017 Act as a declaration that the Legislature intended the provision to establish a vested right to be free from liability." Maj. Op. at 35 n.18. To the contrary, I treat the General Assembly's use of the term "statute of repose" to describe Subsection (d) as a declaration that the Legislature intended the provision to establish a statute of repose. It is the Majority opinion that does the "conflat[ing]" here (Maj. Op. at 35 n.18) when, in the course of analyzing what Subsection (d) *is* (a statute of repose or a statute of limitations), it sets out on a search for evidence that the General Assembly understood that a *consequence* of enacting Subsection (d) would be the establishment of a vested right to be immune from suit.

15

surplusage, superfluous, meaningless, or nugatory[.]'" *Wheeling v. Selene Finance LP*, 473 Md. 356, 384 (2021) (citation omitted). The Majority opinion's interpretation of the 2017 Act contravenes this principle.

In the Majority opinion's view, both Subsection (b) and Subsection (d) were statutes of limitation. Subsection (b) of the 2017 Act was a statute of limitations that, on its face, applied both to non-perpetrator defendants and to those defendants who committed the acts of abuse. It required that an action for damages arising out of an alleged incident or incidents of child sexual abuse be filed at any time before the victim reaches the age of majority or, subject to Subsection (d), within the later of 20 years after the date that the victim reaches the age of majority, or three years after the date that the defendant is convicted of a crime relating to the alleged incident or incidents of abuse. Thus, as to non-perpetrator defendants, such as the Institutions in these cases, the statute of limitations under Subsection (b) expired when the victim reached the age of 38 (20 years after the age of majority).

Subsection (d)'s time period applied only to non-perpetrator defendants, and it, too, provided an outer filing limit of 20 years after the victim reaches the age of majority. Thus, if the Majority opinion is correct that Subsection (d) was a statute of limitations, it was duplicative of Subsection (b) as that subsection applied to non-perpetrator defendants. In other words, if the General Assembly only wanted to provide a statute of limitations that,

as to non-perpetrator defendants, would run when the victim reached age 38, there was no need to enact Subsection (d). Subsection (b) would have sufficed on its own.[13]

The Majority opinion recognizes this redundancy, "agree[ing] with the Institutions that the apparent total or near total overlap between these two provisions, if both are interpreted to be statutes of limitations, suggests that the General Assembly did not intend for both of them to operate in the same way." Maj. Op. at 46. This acknowledgment of the superfluousness of Subsection (d) if it is a statute of limitations, in my view, is all but dispositive of the question before us.

*Nothing in Subsection (d) Is Inconsistent with an Intent*
*to Create a Statute of Repose.*

But if we continue the analysis and look at Subsection (d) on its own, nothing in that subsection is inconsistent with the General Assembly's stated purpose to enact a statute of repose, nor is the conclusion that Subsection (d) is a statute of repose inconsistent with *Anderson*.

As the Majority opinion notes, Subsection (d) consists of three components. Maj. Op. at 36. First, the opening "[i]n no event" phrase: "In no event may an action for damages … be filed …." Second, Subsection (d) identifies what it regulates, which is child sexual abuse claims against non-perpetrator defendants. Third, the statute identifies what it

---

[13] Subsection (b) was originally part of the bill that became the 2017 Act; Subsection (d) was not. *See* H.B. 642, 437th Gen. Assemb., Reg. Sess. (Md. 2017); S.B. 505, 437th Gen. Assemb., Reg. Sess. (Md. 2017). Thus, the General Assembly already was contemplating extending the statute of limitations applicable to all defendants from seven to 20 years beyond the age of majority before Subsection (d) was proposed for consideration.

accomplishes with respect to such claims, which is to preclude them against non-perpetrator defendants more than 20 years after the alleged victim reaches the age of majority. I address each of these provisions in turn.

**The "in no event" language.** The Majority opinion rejects the Institutions' argument that the phrase "[i]n no event" reflects an intent to establish an absolute bar consistent with a statute of repose. Respectfully, I disagree.

Start with the principle that we give statutory terms their common, ordinary meaning. *See, e.g.*, *Buarque de Macedo v. Automobile Ins. Co. of Hartford, Conn.*, 480 Md. 200, 215 (2022). The phrase "in no event" conveys a clear and absolute prohibition or limitation. For Subsection (d), the prohibition applies to pursuing claims against non-perpetrator defendants more than 20 years after the date on which the victim turns 18. The import of "in no event" is clear: No exceptions.

This language is not unique. The "in no event" language is commonly used nationwide to establish the absolute bars provided by statutes of repose, including in statutes governing claims related to the sexual abuse of minors. *See, e.g.*, *M.E.H. v. L.H.*, 685 N.E.2d 335, 339 (Ill. 1997) (applying the statute of repose in 735 ILCS 5/13-202.2(b), which provided that "in no event" shall an action be brought more than 12 years after the plaintiff attained the age of majority); *Doe v. St. Benedict's Abbey,* 189 P.3d 580 (Kan. Ct. App. 2008) (analyzing statute of repose in K.S.A. 60-513(b) that applied generally to tort claims, which provided that "in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action"); *Bennett v. United States*, 539 P.3d 361, 364 (Wash. 2023) (statute of repose for medical malpractice actions); *Sherman*

18

*v. State*, 492 P.3d 31, 34 (Or. 2021) (statute of repose for negligent injury to person or property); *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 107 (2d Cir. 2013) (statute of repose in the Securities Act of 1933).

We also read statutory language not in isolation, but "within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute." *Lockshin v. Semsker*, 412 Md. 257, 275-76 (2010). Recall that Subsection (b) extended the existing seven-year limitations period to permit filing of an action before the victim reaches 18 or within the later of 20 years after the victim reaches 18 or three years after the defendant is convicted of certain related crimes. Notably, Subsection (b) mirrors the typical structure of a statute of limitations: identification of the cause of action followed by a mandatory timeframe for filing suit with applicable exceptions. *Compare* CJP § 5-117(b) (2017) ("An action for damages arising out of an alleged incident or incidents of sexual abuse that occurred while the victim was a minor shall be filed … subject to…") *with* CJP § 5-101 ("A civil action at law shall be filed within three years from the date it accrues unless…"). The phrase "in no event" does not appear in what is understood to be a typical statute of limitations. That is telling, because when the "legislature uses different words ... it usually intends different things." *Toler v. Motor Vehicle Admin.*, 373 Md. 214, 223 (2003); *accord Cook v. Deltona Corp.*, 753 F.2d 1552, 1562 (11th Cir. 1985) (noting that where a statute provides a tolling period, "and then includes a secondary date which 'in no event' can be surmounted, there is good basis for belief that the latter date was intended as an absolute barrier to the filing of suit") (citations omitted).

Departing from the plain meaning of "in no event," which has been used around the nation to enact statutes of repose, the Majority opinion says this phrase is "most naturally read as an expression of the order of precedence of co-existing statutory provisions – i.e., with former subsection (b), which is expressly made 'subject to' Subsection (d)." Maj. Op. at 39. But this reading also is undermined by the redundancy of Subsection (b) and Subsection (d) if the latter is a statute of limitations. That is, because Subsection (b) already provides that a plaintiff may not file a claim after the age of 38 against a non-perpetrator defendant, there is no need for another statute of limitations that addresses the possibility (the "event") of a claim being filed after the age of 38 against a non-perpetrator defendant. And, there is no need for Subsection (b) to be "subject to" an identical statute of limitations.

In contrast, if Subsection (d) is a statute of repose, it makes sense for it to begin with "[i]n no event," as many other statutes of repose do to signal an absolute bar.[14] And, it makes sense for Subsection (b) to be "subject to" Subsection (d), to make clear that any tolling that otherwise would be possible under Subsection (b) is not permissible with respect to claims against non-perpetrator defendants.

**Regulating claims "against a person or governmental entity that is not the alleged perpetrator."** This Court has recognized that a "statute of repose" describes a statute that "shelters legislatively-designated groups from an action" for the purpose of

---

[14] This reading also is confirmed by Section 3 of the 2017 Act, which, as discussed above, instructs that courts must construe Subsection (d) to apply retroactively to provide repose to defendants regarding actions that were barred by the previously applicable statute of limitations (as well as prospectively).

providing a "grant of immunity to a class of potential defendants after a designated time period." *Anderson*, 427 Md. at 118.

Subsection (d) applies only to a "person or governmental entity that is not the alleged perpetrator." Accordingly, the statutory scheme differentiates between perpetrator and non-perpetrator defendants. The Majority opinion, however, dismisses this distinction, contending that this reference to this class of potential defendants – non-perpetrator defendants – does not demonstrate an intent to shelter non-perpetrator defendants from an action after the designated amount of time. *See* Maj. Op. at 39-40. The Majority's reasoning is that: (1) the legislatively-designated group is distinguished only by relative culpability; (2) the General Assembly may have been concerned about the effects of time on non-perpetrator defendants' ability to defend against stale claims; and (3) the General Assembly might have been concerned about stale claims for both defendant groups but carved out perpetrators for special exposure due to their greater culpability. Maj. Op. at 39-40. These are all possible reasons for why a legislature might single out a class of defendants for immunity after a certain period of time. However, the General Assembly just as reasonably could have concluded that non-perpetrator defendants may often be institutions that can reform themselves, rid themselves of leaders who failed children in the past, and provide valuable services to children and adults going forward. As such, the General Assembly could have concluded that there was a societal benefit to providing repose 20 years after the age of majority to such institutional defendants, but not to perpetrators.[15]

---

[15] The Majority opinion recognizes that statutes of repose "are the product of a legislative balancing of 'the economic best interests of the public against the rights of

21

Ultimately, what motivated the General Assembly to single out non-perpetrator defendants to receive repose is irrelevant to the textual analysis. Consider another statute of repose. Section 5-108(b) of the Courts and Judicial Proceedings Article is a statute of repose that shields "any architect, professional engineer, or contractor for damages incurred when wrongful death, personal injury, or injury to real or personal property, resulting from the defective and unsafe condition of an improvement to real property, occurs more than 10 years after the date the entire improvement first became available for its intended use." The statute defines a specific class of defendants: "any architect, professional engineer, or contractor." Would the Majority conclude that CJP § 5-108(b) is not a statute of repose because it is not clear from the text why these groups are specifically protected? Of course not. A plain-text approach starts with the recognition that a class of defendants has been singled out, which leads to the inference that the statute aims to "shelter[] [a] legislatively-designated group[] from an action after a certain period of time." *Anderson*, 427 Md. at 118. A plain-text approach observes that the line exists and discerns legislative intent from there. Accordingly, that Subsection (d) provides an absolute bar to an action against a specific class of potential defendants is indicative of a statute of repose.

**Precluding claims against non-perpetrator defendants more than 20 years after the alleged victim reaches the age of majority.** Finally, we come to the last

___

potential plaintiffs,' to determine an amount of time 'after which liability no longer exists.'" Maj. Op. at 15 (quoting *Anderson*, 427 Md. at 121). However, the Majority opinion does not discuss the legislative balancing that is apparent on the face of the 2017 Act, which almost tripled the period of time in which plaintiffs could bring suit, while for the first time "provid[ing] repose" to non-perpetrator defendants – *i.e.*, assuring non-perpetrator defendants that previously barred claims "in no event" would be revived.

component of Subsection (d). The Majority opinion offers two reasons for why this provision supports the conclusion that Subsection (d) is a statute of limitations. First, it suggests that Subsection (d) operates like a typical statute of limitations by barring the "filing" of a claim after a set period, without eliminating the cause of action itself. Maj. Op. at 40-41. However, as the Majority opinion acknowledges, our case law has been "imprecise," even inconsistent, in describing this subtle distinction between a statute of limitation and statute of repose. Maj. Op. at 14-15 & n.9. Given this inconsistency, it is doubtful that the General Assembly's reference to an action being "filed" in Subsection (d) evidences an intent to create a statute of limitations. *See also Waldburger*, 573 U.S. at 16 (in describing similar imprecision in federal law, observing that "in a literal sense a statute of repose limits the time during which a suit 'may be brought' because it provides a point after which a suit cannot be brought" and noting that Corpus Juris Secundum, § 7, at 24, described a statute of repose as "limit[ing] the time within which an action may be brought").

Second, the Majority opinion reasons that the General Assembly's chosen trigger for running the time period in Subsection (d) – the victim reaching the age of majority – evidences an intent to create a statute of limitations. The argument is that while the trigger differs from the date of injury, a child sexual abuse claim accrues at the time of the abuse, and so Subsection (d) essentially provides for "an accrual-based trigger with built-in tolling" due to the victim's minority. Maj. Op. at 41-42. Therefore, the Majority opinion concludes, because the trigger in Subsection (d) is not "truly unrelated to the alleged victim's injury," Subsection (d) aligns more with a statute of limitations. Maj. Op. at 42.

23

In my view, a victim's age of majority is unrelated to the victim's injury, which provides yet more support for the proposition that the General Assembly intended Subsection (d) to be a statute of repose. The date of an act of child sexual abuse and the date a victim turns 18 are necessarily different dates. Yet, for all plaintiffs, the time period begins to run at the age of majority. That is, whether the victim was injured at age 7 or 17 or at some other point during childhood, the trigger is the same. The Majority opinion recognizes as much. *See* Maj. Op. at 41 ("At first blush, a victim reaching the age of majority seems unrelated to both that victim's injury or discovery of injury and any act or omission of the defendant."). And, notably, other states have enacted statutes of repose with respect to claims of child sexual abuse that use the plaintiff's age as the trigger. *See* Ill. Rev. Stat., 1990 Supp., Ch. 110 (codified at 735 ILCS 5/13-202.2(b) (1990)) ("The limitation periods under subsection (b) do not begin to run before the person abused attains the age of 18 years."); *M.E.H.*, 685 N.E.2d at 339 (applying the statute of repose in 735 ILCS 5/13-202.2(b)); *Bernie v. Blue Cloud Abbey*, 821 N.W.2d 224, 230 n.9 (S.D. 2012) (discussing a statute of repose that prohibited plaintiffs who have reached the age of 40 from recovering from non-perpetrator defendants). Thus, the General Assembly did not break new ground by using the age of majority as the trigger for a statute of repose with respect to child sexual abuse claims.

As noted above, the Majority opinion tries to overcome this distinction between a classic statute of limitations that runs from the date of injury and Subsection (d) by claiming that the General Assembly built minority tolling into the trigger. But, significantly, the 2017 Act added a provision expressly permitting victims to bring civil claims *before*

24

reaching the age of majority – indeed, "[a]t any time before the victim reaches the age of majority." CJP § 5-117(b)(1); 2017 Md. Laws 3897 (ch. 656). Thus, the General Assembly in the 2017 Act contemplated that claims would be brought both before and after victims reached the age of majority, and did not refer to tolling in either Subsection (b) or Subsection (d). In the absence of an express reference to minority tolling in the text of Subsection (d), it is a stretch to say that the General Assembly decided to build minority tolling into its trigger. In my view, it is more likely that the General Assembly chose as the trigger a date that an institution probably would be able to determine with respect to a person who had been in their care as a child, *i.e.*, the date the person reached (or would reach) the age of 38.[16]

Even accepting for the sake of argument that Subsection (d)'s age-based trigger is, at least to some extent, related to the plaintiff's injury, that nevertheless does not lead to the conclusion that Subsection (d) is a statute of limitations under *Anderson*. In *Anderson*, we answered a certified question from the United States Court of Appeals for the Fourth Circuit as to whether a deadline in CJP § 5-109 for filing a medical malpractice action was a statute of repose or a statute of limitations. First, the Court recognized that the question whether a particular time limit under Maryland law for bringing suit should be classified

---

[16] The Majority opinion suggests that the date when the non-perpetrator defendant "ceased having any supervisory authority or control over the alleged perpetrator or ceased having any duty of care for the alleged victim" would be a more appropriate trigger for a statute of repose. Maj. Op. at 42. If this Court were drafting a statute of repose for claims of sexual abuse, we might prefer such a trigger to the one the General Assembly chose, but nothing in the law compelled the General Assembly to write a statute of repose in the way the Majority opinion suggests it should have. As discussed above, it is the General Assembly's prerogative to draft statutes as it sees fit.

as a statute of limitations or a statute of repose was usually an academic question without practical effect. 427 Md. at 102-03. However, that distinction made a difference in *Anderson*, which involved a medical malpractice claim asserted under the Federal Tort Claims Act ("FTCA"). The FTCA contained its own procedural statute of limitations; however, under federal law, Maryland substantive law would govern the claim. If the time restriction in CJP § 5-109 for bringing a malpractice claim was a statute of repose under State law, it would be considered substantive state law that, for purposes of the FTCA, barred the plaintiff's claim in that case.

In answering the certified question, the Court confronted its contradictory statements about whether CJP § 5-109 was a statute of limitations or a statute of repose, all in past decisions of the Court where that distinction did not matter. 427 Md. at 106-17. The *Anderson* Court's task was thus to deal with a legacy of loose language in the common law (*i.e.*, appellate decisions, not the statute itself) that did not distinguish carefully between "statutes of limitation" and "statutes of repose" and used the terms "limitation" and "repose" as synonyms.

To accomplish that task, the *Anderson* Court identified various characteristics that might help distinguish a statute of limitations from a statute of repose. Ultimately, it concluded that the two concepts contained "overlapping features" and that there were "definitions aplenty from which to choose." 427 Md. at 123. In deciding the question before it, the Court "[chose] not to rely on any single feature" of the statute. Rather, it looked at the statute "holistically" and applied the usual tools of statutory construction. *Id.* at 123-24. Thus, "[f]irst and foremost, the plain language of the statute controls." *Id.* at 125. Given

26

that the General Assembly had not explicitly specified whether CJP § 5-109 was a statute of repose or a statute of limitations, the Court looked to how that language operated in practice. Based on that analysis, the *Anderson* Court concluded that the "plain language" of § 5-109(a)(1) led to the conclusion that it is not a statute of repose. *Id.* at 125-26.

Here, the Majority treats some combination of the features we described in *Anderson* as essential to a statute of repose, most significantly, the trigger for the time limitation. But *Anderson* did not require a statute of repose to be triggered from a date "truly" unrelated to the victim's injury in order to be a statute of repose. It is true that statutes of repose can run from such a date. However, our predecessors observed that while the trigger date is important in distinguishing statutes of limitation from statutes of repose, we look "holistically at the statute" and ultimately that the plain language of the statute comes "[f]irst and foremost." *Id.* at 124-25. Our case law provides guideposts for interpreting statutes but does not impose legislative mandates. Indeed, the *Anderson* Court's description of common features of statutes of limitation and statutes of repose is drawn from case law that is, of course, common law as the product of court decision. But common law cannot override explicit language of a statute properly enacted by the General Assembly. *See Stearman v. State Farm Mut. Auto. Ins. Co.*, 381 Md. 436, 454 (2004) ("When the common law and a statute collide, the statute, if constitutional, controls.") (internal quotation marks and citation omitted).

In sum, a holistic review of the text of the 2017 Act, with the plain language being given due consideration "first and foremost," demonstrates that Subsection (d) is a statute of repose.

*The Majority's Interpretation Is Based on the Premise That the General Assembly That Passed the 2017 Act Did Not Understand What a "Statute of Repose" Is.*

Ultimately, the Majority opinion concedes, as it must, that the purpose paragraph and Section 3 of the 2017 Act "strongly support" the conclusion that the bill created a statute of repose. Maj. Op. at 43. To overcome that support, the Majority opinion necessarily concludes that the General Assembly in 2017 did not understand what a "statute of repose" is (and that the General Assembly in 2023 continued to fail to understand the meaning of the term when it said in the purpose paragraph of the 2023 Act that it was repealing the "statute of repose"[17]). This premise is flawed for several reasons.

First, it runs contrary to a bedrock principle under this Court's precedents that the General Assembly knows what it is saying when it uses specific language. In that regard, we discern legislative intent starting with the text "on the tacit theory that the General Assembly is presumed to have meant what it said and said what it meant." *In re Emergency Remedy*, 483 Md. 371, 404 (2023); *see also Peterson v. State*, 467 Md. 713, 727 (2020) (repeating the same phrase); *Haile v. State*, 431 Md. 448, 466 (2013) (same).

Second, the Majority opinion fails to appreciate that "statute of repose" is a legal term of art. Thus, while the Majority opinion correctly observes that "we ordinarily afford terms in legislative enactments their common, ordinary meaning," Maj. Op. at 44, "when the term in a statute is a legal term, absent any legislative intent to the contrary, the term is presumed to be used in its legal sense." *Dean v. Pinder*, 312 Md. 154, 161 (1988). "Statute of repose" is a specific legal term. Thus, the Majority opinion's attempted end-run around

---

[17] 2023 Md. Laws, Ch. 6.

28

the presumption that the Legislature understood what it meant when it used the phrase "statute of repose" fails. *See* Maj. Op. at 44-45 & n.27 (implying that because "statute of repose" does not appear in the Merriam-Webster's Collegiate Dictionary or the New Oxford American Dictionary, the General Assembly did not understand what that term meant when it enacted the 2017 Act). The absence of the phrase "statute of repose" in common-use dictionaries is immaterial.

Third, just five years before the 2017 Act, as discussed above, this Court thoroughly explained the meaning of this legal term of art in *Anderson*, in the process detailing the differences between, and consequences of establishing, a statute of limitations versus a statute of repose. Because we generally presume that the Legislature is familiar with our prior decisions, our traditional analysis leads to the conclusion that the General Assembly acted with full knowledge regarding the distinction between a statute of repose and a statute of limitations. *See, e.g.*, *Taylor v. Mandel*, 402 Md. 109, 131 (2007) (noting that courts "presume that the Legislature has acted with full knowledge of prior and existing law, legislation and policy[.]"); *Bellard v. State*, 452 Md. 467, 494 (2017) ("The General Assembly is presumed to be aware of this Court's interpretations of statutes.").

The three presumptions described in the preceding paragraphs may often be fictions, but they are necessary ones lest the Court arrogate to itself the Legislature's policy-making role. Abandonment of these presumptions is an easy path to deconstructing any legislation

not to a reviewing court's liking and, in the process, effectively substituting this Court's judgment for that of the General Assembly on matters of policy.[18]

-----------

In sum, the Majority's analysis does not comport with our principles of statutory construction. It casts prior judicial statements about the primacy of the "plain language" of legislation and the importance of a bill's title, particularly its purpose paragraph, into doubt. It suggests that common legal terms that do not appear in non-legal dictionaries might not be given effect at the whim of the construing court. Legislators and those who advise them are left wondering how much detail will satisfy a reviewing court that the plain language of a bill means what it says. How much detail will suffice presumably will be fleshed out in future cases.

## B. Legislative History

As discussed above, the plain language of the 2017 Act makes the General Assembly's intent to enact a statute of repose crystal clear. Subsection (d) not only exhibits the hallmarks of a statute of repose, but the General Assembly essentially provided a flashing neon sign in the purpose paragraph, and Section 3 of the 2017 Act that announces Subsection (d) as a statute of repose. Indeed, it is difficult to imagine how the General Assembly could more "plainly" state that the bill created a statute of repose distinct from

---

[18] The Majority opinion responds to this concern by saying that it is my position "that would lead to the invalidation of a portion of a legislative enactment." Maj. Op. at 46-47 n.29. In my view, this Court should hold that the 2023 Act is an *effective* law that repeals the statute of repose *prospectively* without retroactively affecting vested rights. The only thing that this Court should "invalidate" is the unconstitutional violation of vested rights through the direction to apply the 2023 Act retroactively.

30

a statute of limitations. For the Majority opinion, however, the plain language of the uncodified provisions of the 2017 Act stands in "plain contradiction" to other plain language in the 2017 Act, *i.e.*, Subsection (d). Maj. Op. at 44 n.26. In the Majority opinion's view, these supposedly contradictory provisions render the 2017 Act ambiguous. Accordingly, the Majority opinion turns to the legislative history of the 2017 Act to resolve the alleged ambiguity. Maj. Op. at 48-53. I agree that it is appropriate to consider the legislative history, but not because the 2017 Act is ambiguous. As discussed, it unambiguously establishes a statute of repose. Nevertheless, it is helpful to examine the legislative history to "help confirm conclusions drawn from the text[.]" *In re O.P.*, 470 Md. at 255.

That legislative history is replete with references that are consistent with the purpose paragraph and Section 3's express statements that Subsection (d) is a statute of repose. In the 2017 bill file, House and Senate Committee Floor Reports explained that the new law "establishes a 'statute of repose' prohibiting a person from filing an action for damages … against a [non-perpetrator] … more than 20 years after the date on which the victim reaches the age of majority." *See* Floor Report, H.B. 642 (2017 Sess.), at 2 (Summary of Bill); Floor Report, S.B. 505 (2017 Sess.) (Summary of Bill), at 2. The Fiscal and Policy Note contained the same language. Fiscal and Policy Note, S.B. 505 (2017 Sess.), at 1.[19] Floor statements also confirmed that the bill "prohibit[ed] the filing of an action against [non-

---

[19] Notably, the Fiscal and Policy Note and both Floor Reports put the term "statute of repose" in quotation marks. That makes sense, because "statute of repose" is a legal term of art, distinct from "statute of limitations," another legal term of art.

perpetrator defendants] more than 20 years after the victim reaches the age of majority," H. Floor Actions, H.B. 642 (2017 Sess.), at 58:04 (Mar. 16, 2017), and the Senate was told that the bill "expands [the] statute of limitations" and "also creates a statute of repose for specified civil actions relating to child sex abuse," S. Floor, H.B. 642 (2017 Sess.), at 2:16:32-2:17:48 (Mar. 23, 2017).

Not all legislative documents are created equal. Thus, "[t]he legislative sources and documents in a bill file that are most authoritative in any given appeal will vary, depending on the issues presented." *In the Matter of Lewis*, 262 Md. App. 32, 50 n.10 (2024) (internal quotation marks and citation omitted). But the documents most likely to reflect actual legislative purpose are "fiscal notes, committee bill analyses, and floor reports." *Id.* (quoting Jack Schwartz & Amanda Stakem Conn, *The Court of Appeals at the Cocktail Party: the Use and Misuse of Legislative History*, 54 Md. L. Rev. 432, 462 (1995)); *see also Blackstone v. Sharma*, 461 Md. 87, 130 (2018) (describing the floor reports and fiscal note as "key" legislative history documents). Here, the legislative documents "most likely" to reflect legislative purpose, *id.*, all confirm the plain text of the statute. That is, they all expressly refer to the creation of a "statute of repose" with respect to claims against non-perpetrator defendants. Ordinarily, this would be considered overwhelming evidence of legislative intent.

Not so here. The Majority opinion disregards the repeated references to a "statute of repose" primarily for two reasons: (1) the language in the legislative documents could equally describe a statute of limitations; and (2) the term "statute of repose" lacks a

common, ordinary meaning, thus making the references not "meaningful." Maj. Op. at 50-51 & n.32.

As for the first point, that language describing a statute of repose may sound like language describing a statute of limitations is not surprising. As discussed above, the two time periods share overlapping features and serve similar objectives. *See also* Maj. Op. at 11 ("Civil statutes of limitations and statutes of repose are both time-based restrictions that can bar proceeding on a cause of action."); *Waldburger*, 573 U.S. at 7 ("Statutes of limitations and statutes of repose both are mechanisms used to limit the temporal extent or duration of liability for tortious acts."). Regarding the second point, I have already explained that when the Legislature uses a legal term of art, we assume it does so intentionally, not haphazardly.

The Majority opinion maintains that "the most notable feature of the legislative history of the 2017 Act is the near complete silence concerning the topic, and especially the effect, of a statute of repose." Majority Op. at 48. Given the consequences of enacting a statute of repose, the Majority finds it "quite odd" that if the General Assembly intended to do so, the legislative record contains "nearly no discussion of it." Majority Op. at 53.

When the Majority opinion refers to "near complete silence concerning the topic," it seems implicitly to be acknowledging the existence of a document in the 2017 bill file that is far from silent about the consequences of enacting a statute of repose. That document, entitled "Discussion of certain amendments in SB0505/818470/1," distinguishes statutes of limitations from statutes of repose. It states that, if adopted, the

33

proposed "statute of repose" will create "vested rights," and observes that "claims precluded by the statute of repose cannot be revived in the future."

The Majority opinion notes that the document is unsigned and undated. *See* Majority Op. at 51-52. True enough, but the document nevertheless is part of the bill file, accurately describes the state of the law at that time, and is the type of informal evidence that this Court on occasion has relied on to tertiarily confirm what the Court's traditional analytical tools already made clear. *See Warfield v. State*, 315 Md. 474, 497 (1989) (reviewing a handwritten note, undated and unidentified, when analyzing the meaning of statute). If a floor report, committee analysis, or fiscal note provided support for the proposition that the General Assembly intended Subsection (d) to be a statute of limitations (despite its superfluity), I would not ascribe significance to the document in the bill file that discusses the consequences of enacting a statute of repose. But all of the other materials in the bill file that refer to Subsection (d) confirm that it is a statute of repose. Against that backdrop, the unsigned document provides further support for the conclusion that the General Assembly in fact intended Subsection (d) to be a statute of repose.

But even if we discount the unsigned document in the bill file, the absence of additional discussion in the legislative history of the consequences of adopting a statute of repose is not evidence that the General Assembly intended Subsection (d) to be a superfluous statute of limitations. I am unaware of an instance where a perceived gap in the legislative history has led us to disregard repeated, objective statements of legislative intent. The Majority opinion cites no prior case of this Court that takes such an approach.

Legislative silence may be intentional, or it may not. The point is that we cannot know for certain, so elevating silence concerning the consequences of legislation to a signal that the General Assembly did not mean what it plainly said in the text of the statute (and in floor reports and other legislative documents) introduces uncertainty to how we interpret statutes. How much must legislators say about the consequences of a bill to demonstrate that it actually understands and intends those consequences? How much "significance," Maj. Op. at 52, must a reviewing court attribute to the bill before it will expect to see a discussion of the bill's consequences in a floor report or other "key" legislative document, and how is that "significance" to be measured? Would the Majority be satisfied in this case that the General Assembly understood the consequences of enacting a statute of repose if the "Discussion of certain amendments in SB0505/818470/1" document had been signed by the bill sponsor? If the document was a little longer and/or cited *Anderson*? And what about interpreting old statutes with little to no legislative history? The Majority opinion's approach raises questions that our established methods of statutory interpretation would typically resolve.

*The Majority Opinion Improperly Relies on the Decision to Repeal the*
*2017 Act As Evidence That the General Assembly Did Not Understand the*
*Plain Language of the 2017 Act.*

The Majority opinion further supports its claim that the General Assembly did not know what it was doing when it passed the 2017 Act explicitly for the purpose of "establishing a statute of repose," by pointing to the decision to repeal the 2017 Act in 2023. The Majority opinion notes that the General Assembly passed the 2017 Act "unanimously[,]" and that "[j]ust six years" later, the 2023 Act received "only six

35

dissenting votes[.]" From this, the Majority opinion infers that, in 2023, the General Assembly (or at least all but six members of the General Assembly) "did not believe they had previously provided a permanent, substantive right of non-perpetrator defendants to be immune from suit." Maj. Op. at 54. Put another way, the Majority opinion considers it unlikely that the General Assembly would knowingly enact a statute of repose in 2017 and then reverse that policy decision "[j]ust six years" later.

This is a novel approach to statutory construction. The Majority opinion cites no prior case in which this Court has relied on the repeal of a law as evidence that the legislators who enacted the repealed law did not understand the meaning of that law's plain language. To the contrary, the repeal of a law is normally understood to reflect a Legislature's decision to substitute one conscious policy choice for another, whether it happens six years or 60 years after the enactment of the prior law. And, "after-the-fact statements – even those of legislators and even as to the purpose or meaning of legislation that did pass – are discounted." *Brown v. State*, 470 Md. 503, 544 n.45 (2020) (emphasis omitted); *see also id.* (explaining that, "[i]n general, '[p]ost-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation' and 'by definition could have had no effect on the legislature's vote'") (quoting *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011) (some internal quotations marks and alterations omitted)); *Collier v. Connolley*, 285 Md. 123, 126 (1979) ("[W]e do not place much weight upon what the Legislature, in 1977, said was intended in a 1974 statute."); *see also* Dissenting Op. of McDonald, J., at 5 n.8.

Moreover, the Majority opinion's speculation is disproven by the title of the 2023 Act. As discussed above, the purpose paragraph of the title of the 2023 Act states explicitly that the 2017 Act had established a "statute of repose," in particular, the purpose paragraph of the title of the 2023 bill says that the bill "repeal[s] a *statute of repose* for certain civil actions[.]" 2023 Md. Laws, Ch. 6 (emphasis added). In any event, the repeal of the statute of repose established by the 2017 Act does not, in and of itself, indicate that it was somehow *not* a statute of repose.[20]

The 2023 General Assembly's decision to repeal the 2017 Act is a better reflection of the political will of the 2023 General Assembly than the intent of the 2017 General Assembly. Indeed, prior to 2023, the General Assembly in 2019 and 2021 debated bills that would have revived claims barred by the 2017 Act. Both times the Attorney General's office advised that the 2017 Act should be read to include a statute of repose and that interfering with the vested rights provided by a statute of repose would likely be unconstitutional. Letter from Kathryn M. Rowe, Asst. Att'y Gen., to Hon. Kathleen M. Dumais (Mar. 16, 2019), at 1-2; Letter from Kathryn M. Rowe, Asst. Att'y Gen., to Hon. William C. Smith, Jr. (June 23, 2021), at 2-3. This shaky ground explains why the 2023 General Assembly "encouraged the early resolution of constitutional challenges" by providing a special interlocutory appeal right. *See* Maj. Op. at 9 (citing 2023 Md. Laws,

---

[20] The purpose paragraph of the 2023 Act also says that the law repeals "the statute of limitations for certain civil actions" – thus, referring to the existing statute of limitations that was established by Subsection (b) of the 2017 Act. Thus, like the purpose paragraph of the 2017 Act, the purpose paragraph of the 2023 Act carefully distinguished between a statute of limitations and a statute of repose.

Ch. 6). The Legislature understood that retroactive application of the repeal provision raised a serious constitutional question.

**Conclusion**

Ultimately, my colleagues in the Majority and I are both seeking to ascertain legislative intent. We part ways, however, in the application of our principles of statutory interpretation, which are grounded in respect for the Legislature as a co-equal branch of government. Respecting the General Assembly's authority means applying the statute before us as written. The text of the 2017 Act is unambiguous. In that legislation, the General Assembly created a statute of repose with respect to claims against non-perpetrator defendants. Thus, any claims against non-perpetrator defendants that were untimely on the effective date of the 2017 Act, or that became untimely before the effective date of the 2023 Act, could not be revived without violating the vested rights of the affected defendants. To the extent the General Assembly retroactively repealed the 2017 Act's statute of repose by enacting the 2023 Act, it violated Article 24 of the Maryland Declaration of Rights and Article 3, Section 40 of the Maryland Constitution. Accordingly, I respectfully dissent.

Justice Eaves and Justice McDonald have authorized me to state that they join in this opinion.

Circuit Court for Prince George's County
Case No. C-16-CV-23-004497

Circuit Court for Harford County
Case No. C-12-CV-23-000767

United States District Court for the District of Maryland
Case No. 1:23-cv-02662-MJM

Argued: September 10, 2024

IN THE SUPREME COURT

OF MARYLAND

Nos. 9 & 10; Misc. No. 2
September Term, 2024

---

ROMAN CATHOLIC ARCHBISHOP
OF WASHINGTON
v.
JOHN DOE, ET AL.

---

BOARD OF EDUCATION OF
HARFORD COUNTY, ET AL.
v.
JOHN DOE

---

THE KEY SCHOOL, INC., ET AL.
v.
VALERIE BUNKER

---

Fader, C.J.
Watts
Booth
Biran
Eaves
Killough
McDonald, Robert N.
 (Senior Justice, Specially Assigned),

JJ.

---

Dissenting Opinion by McDonald, J.,
which Biran and Eaves, JJ., join.

---

Filed: February 3, 2025

I join Justice Biran's dissent. There is no need to repeat in any detail the analysis so well stated by Justice Biran. I write only to underline two respects in which the Majority Opinion's reasoning is at odds with this Court's longstanding principles of statutory construction. As Justice Biran observes, these choices made by the Majority Opinion in this case will confuse anyone who tries to predict how this Court will assess legislative intent in the future. Dissent of Justice Biran at 30.

*Construing Statutory Language as Meaningless*

First, the Majority Opinion reiterates a standard expression of the principles of statutory interpretation, including that the Court "avoid[s] forced or subtle interpretations [and] constructions that would negate portions of the language or render them meaningless."[1] Nevertheless, as Justice Biran points out and as the Majority Opinion concedes, its decision that Subsection (d)[2] is a statute of limitations renders that subsection superfluous of Subsection (b) and thus meaningless. Dissent of Justice Biran at 15-17; Majority Opinion at 46.

*Discounting a Bill's Title*

Second, in effectively excising Subsection (d) from the 2017 law, the Majority opinion deviates from another longstanding principle derived from the Maryland Constitution, but not acknowledged by the Majority Opinion, that the body of a bill must

---

[1] Majority Opinion at 33 (quoting *Westminster Management, LLC v. Smith*, 486 Md. 616, 644-46 (2024)).

[2] For ease of reference, I use the designations of the statutory provisions as adopted in the Majority Opinion.

be interpreted consistently with its title. That principle is superior to extrinsic interpretive aids. An example of the application of that principle is *MTA v. Baltimore County Revenue Authority,* 267 Md. 687 (1973), where this Court looked to the title, including the purpose paragraph, of the bill that enacted the statute in question and held that the language of the title, rather than the competing methods of interpretation proposed by the parties, resolved the meaning of the statute.[3]

---

[3] In that case, the issue was whether MTA buses were exempt from paying bridge tolls to a county revenue authority under a State law that exempted the MTA from "any and all ordinary or special taxes, assessments and charges, except water and sewer charges …." In the circuit court, the MTA and the revenue authority cited various dictionary and case law definitions of "charges" to support their respective positions. The circuit court accepted the MTA's proffered definitions and held that the exemption encompassed the bridge tolls.

On appeal, this Court held that, regardless of other aids to statutory interpretation, "the first rule of statutory construction [is] that the intent of the General Assembly is to be determined from the purpose and language of the enactment" and, to that end, looked to the title of the bill that enacted the statute. 267 Md. at 695. In particular, the Court referred to two parts of the bill's title: (1) the short title ("Tax Exemption") and (2) the purpose paragraph ("to exempt … the property, activities and income of [the MTA] from taxation"). *Id.*

The Court concluded that the title resolved the dispute over the meaning of the operative provisions:

> That the title of an act is relevant to ascertainment of its intent and purpose is well settled. In view of the requirement of the Maryland Constitution, Article III, § 29 – that every law enacted by the General Assembly embrace but one subject and shall be described in its title – to expand the use of the word "charges" to embrace tolls, which clearly are neither taxes nor charges in the nature of taxes, is to fail to conform the substance of the statute with its title description….

*Id.* at 695-96 (citations omitted). Because a bridge toll is neither a tax nor a charge in the nature of a tax, the Court held that the MTA was not exempt from paying the tolls. *Id.* at

Here the plain language of the title unmistakably identifies Subsection (d) as "establishing a statute of repose." The Majority Opinion sidesteps this principle by characterizing the bill's title as just a "label" and never confronts the constitutional significance of that "label." Majority Opinion at 34-38.[4] Then, despite the fact that the *Anderson* case had clearly stated that "a statute of repose provide[s] an absolute bar to an action or … a grant of immunity to a class of potential defendants after a designated time period,"[5] the Majority Opinion concludes that the General Assembly did not understand the phrase "statute of repose" to have that meaning. Majority Opinion at 53-55.

---

697. The Majority Opinion provides no direction on whether the principle explained in *MTA* remains good law.

[4] The Majority Opinion quotes and briefly discusses the purpose paragraph of the 2017 law's title – the part of a bill title that past courts have primarily considered when relating the title to the body of a bill. Majority Opinion at 37 n.19, 43-45. However, the Majority Opinion looks to the body of the bill to create ambiguity in the title instead of looking to the title to clarify the body of the bill. *Id*. at 47.

[5] *Anderson v. United States*, 427 Md. 99, 118 (2013). In that case, the General Assembly had enacted legislation that was identified in the bill's title as a "statute of limitations." This Court had subsequently referred to that legislation as a "statute of repose" in circumstances where the difference between the two concepts did not matter. In *Anderson*, the Court undertook a "holistic" analysis of the statute to resolve the confusion created by the Court's prior descriptions of the statute. The *Anderson* Court disclaimed any all-encompassing definition of a statute of repose based on the criteria it used in that analysis. *Id*. at 123-24. However, the Majority Opinion seems to assume that the *Anderson* opinion held that some of the criteria that it used to resolve the Court's disparate case law descriptions of that statute are a prerequisite even when the Legislature is explicit.

As is evident in the briefs filed by the parties in *Anderson* and available on Westlaw, neither party in that case relied on the language of the bill's title. And, apart from quoting the title of the original enactment of the statute in question, the *Anderson* Court also did not address the significance of the bill's title. Rather, the Court undertook an extended analysis to clear up its own disparate descriptions of the statute. In the end, the Court arrived at a conclusion that matched the bill's title.

3

*Conclusion and Consequences*

These two deviations from the principles of statutory interpretation are related. The addition of Subsection (d) to the body of the bill and the inclusion of the phrase "establishing a statute of repose" in the bill's title were part of the same amendment to the identical cross-filed 2017 bills while they were progressing through the Legislature. *See* Amendments SB0505/458675/1, HB0642/252810/1 (2017).

The Majority Opinion cites no precedent in which this Court – or any other Maryland court – has concluded that key language of a bill was meaningless and also ignored clear direction in the bill's title as to the meaning of that language.

In my view, the General Assembly established a statute of repose in 2017 and then for various reasons decided to repeal that provision six years later. It is not unusual for the General Assembly to change its mind as to whether particular legislation it enacted in the past remains a good idea – and it is perfectly constitutional for the General Assembly to act on that change of mind so long as it does not violate vested rights. Thus, as Justice Biran points out, the General Assembly's 2023 repeal of the previously-enacted statute of repose was valid; the only defect in the 2023 legislation was the unusual[6] and uncodified Sections 2 and 3 of the 2023 legislation that purported to apply it retroactively. Dissent of Justice Biran at 30 n.18. The severability provision of the 2023 law (uncodified Section 4), which saves any portion of the 2023 law that is not invalid, makes clear that the General

_____

[6] The Majority Opinion observes that it is "extremely rare, perhaps unprecedented" to retroactively eliminate even a statute of limitations. Majority Opinion at 31.

4

Assembly understood that the uncodified sections of the bill making it retroactive could well be unconstitutional and therefore invalid.

The explanation offered in the Majority Opinion is not that the General Assembly changed its mind in 2023, but that the General Assembly did not know what it was doing in 2017. Majority Opinion at 52-54.[7] The Majority Opinion thus sets a precedent that, in construing legislation enacted by the policy-making branch of State government, the Court will be the arbiter of when the General Assembly knows what it is doing and when it does not. Whether and when the Court will revert to its oft-stated presumption that the Legislature "meant what it said and said what it meant"[8] is not clear from the Majority Opinion.

Justice Biran and Justice Eaves have authorized me to state that they join this opinion.

---

[7] The Majority Opinion appears to draw this inference about the understanding of the 2017 General Assembly from the fact that the 2023 General Assembly repealed the statute of repose six years later. Apart from the fact that there had been substantial turnover in the membership of the Legislature as a result of two intervening elections (2018, 2022), such an inference would be invalid even if there had been no turnover. This Court has consistently held that "little weight is to be accorded to *post-enactment* statements of legislative intent, even by the legislators who passed the particular law." *Bldg. Materials Corp. of Am. v. Bd. of Educ. of Baltimore County*, 428 Md. 572, 592 (2012) (emphasis added); *see also Kelly v. Marylanders for Sports Sanity, Inc.,* 310 Md. 437, 471 n. 18 (1987).

[8] *E.g., In re Emergency Remedy*, 483 Md. 371, 404 (2023).

5